## THE PECK-SMEAD COMPANY v. CITY OF SHERMAN ET AL.

Decided April 20, 1901.

**1.—Municipal Corporation—Liability of City—School Buildings—Pleading.**

In an action against a city and its school board for violation of a contract made by the board with plaintiff for furnishing the seating apparatus for a school building, the city's demurrer to the petition was properly sustained where it was not alleged that the city made the contract, or authorized the board to make it, or had made any provisions to meet the obligation of the contract, or that it had any funds which it had a right to apply to such purposes.

**2.—Same—Action Against School Board—Necessary Allegations.**

Nor could such action be maintained against the school board without allegations showing the board was authorized by the city to construct the building, or to use any of the funds received or receivable from the city or State for that purpose.

Error from Grayson. Tried below before Hon. Don A. Bliss.

*A. L. Beaty,* for plaintiff in error.

*Webb & Jones* and *W. J. Brown,* for defendants in error.

TEMPLETON, ASSOCIATE JUSTICE.—The Peck-Smead Company brought this suit against the city of Sherman and the school board of said city. Each of the defendants interposed a general demurrer to the petition. The demurrers were sustained and final judgment rendered, dismissing plaintiff's suit. The case has been brought to this court by writ of error.

It was alleged in the petition that on and prior to August 30, 1893, the city of Sherman was an incorporated city of less than 10,000 inhabitants, having been incorporated under the general laws; that it had legally assumed control of the public free schools within its jurisdiction, and that a board of school trustees had been duly organized and constituted.

It was further alleged that during the year 1893 the school board was having a school building constructed within the limits of said city, and found it necessary and advisable to provide the building with a heating, warming, ventilating, and dry closet system, and advertised for bids therefor; that plaintiff in error submitted to the board its written bid, offering to put in the system for the sum of $2040, which bid was duly accepted by the board.

It was also alleged that payments on the contract were to be made as follows: 20 per cent when the first joists were set; 40 per cent when furnaces were set in position in basement, and 40 per cent when the work should be completed, and that the work to be done would form and constitute a part of the building. A breach of the contract was charged, in that it was alleged that the board and the city refused to permit plaintiff in error to perform the contract, whereby it was damaged in the sum of $1200, the difference between the contract price of the work and what it would have cost plaintiff in error to do the work.

There was a further allegation to the effect that the board "had in its possession, and was entitled to receive from said city and from the State at the time the contract was made, ample funds available for such purposes, to wit, about $20,000, with which to pay plaintiff the sum mentioned in said contract, as well as to otherwise complete said building." The subsequent reincorporation of the city under a special charter, which subjected the new corporation to all the duties and liabilities of its predecessor, was alleged.

The petition does not charge the city with having entered into any contract with plaintiff in error. Neither is it alleged that the city ever agreed to perform the contract made with the school board, or that the board was authorized by the city to make the contract.

It is true that there is a general allegation in the petition to the effect that the board had authority to make the contract, but the allegation appears to be a conclusion of the pleader concerning the legal powers of such boards, and not intended as a charge that the board was acting by authority of the city. It was not alleged that the city had made any provision to meet the obligations created by the contract, or that it had any funds which it had a right to apply to such purposes. No cause of action against the city is shown by the petition, and its demurrer was properly sustained.

It is contended by the plaintiff in error that the board of trustees had authority, under the statute, to contract for the construction of school buildings. Article 4010 confers on such boards "the same powers, control, management, and government of and over the public free schools" within its jurisdiction as may be by law conferred on the city council. Article 4022 gives to the city council authority to construct school buildings. Hence, it is argued that the school board had the power to contract for such buildings.

Article 4034, Revised Statutes, authorizes the city to provide free school buildings in the manner and under the restrictions and limitations prescribed in article 486, where it is provided that the city council may levy taxes and issue bonds for the purpose of constructing or purchasing public buildings, including building sites and buildings for public free schools. A free school building so purchased or constructed is a public building of the municipality and one of its public improvements. Dwyer v. Hackworth, 57 Texas, 245.

Before any contract made by a city for any public improvements, not intended to be paid for out of its current revenues, is binding on the city, provision must be made to meet the obligations of the contract. McNeill v. City of Waco, 89 Texas, 83. It is clear that the school board had no authority to create or raise a fund to be used in constructing a school building. It is certain that the board could not legally appropriate all the funds coming into its possession to such purposes. The board could use the funds under its control only for the purposes directed by the council or permitted by law. If the city had legally provided a fund for the purpose of constructing the building in question, and had placed the fund at the disposal of the board, then the power of the board to make the contract set out in the petition might be conceded, but no such facts are alleged. Neither are any facts stated tending to show that any of the funds under control of the board were of such a character that the board was authorized to employ the same in erecting a school house.

We conclude that, as it is not shown that the board was authorized by the city to construct the building, or to use any of the funds received or receivable from the city for that purpose, or that it had authority to appropriate any of the State funds to that end, the board was without legal power to enter into the contract relied on by plaintiff in error.

It may be insisted, however, that the general allegation in the petition, to the effect that the board had in its possession and was entitled to receive from the city and from the State ample funds available for such purposes, is sufficient to show authority in the board to make the contract. We think the allegation wholly insufficient to supply the want of facts necessary to empower the board to act in the premises. The funds held by the board might be "available for such purposes," and yet the board be without authority to apply the same, in the absence of being so directed by the city, or by reason of a failure to take the necessary steps to render legal such use of the said funds. Besides, the allegation is entirely too general in its terms. The amount of funds received and receivable from the city is not stated and distinguished from the amount received and receivable from the State. The sources from which any of the funds were derived are not given. It is not charged that the funds were subject to appropriation for the current year. It is not alleged that it was contemplated that the obligations created by the contract should be satisfied out of the said funds. See McNeill v. City of Waco, supra.

We are of opinion that the petition states no cause of action against the school board, and that the court below did not err in sustaining the demurrer. The judgment is affirmed.

*Affirmed.*