HAMILTON et al. v. BOWERS, Mayor, et al.†

(Court of Civil Appeals of Texas. Galveston. April 3, 1912. Rehearing Denied April 18, 1912.)

1. SCHOOLS AND SCHOOL DISTRICTS (§ 92*)— SCHOOL FUNDS.

Public School Act (Acts 29th Leg. c. 124), § 133, provides that all cities which have assumed control of public schools within their limits shall have exclusive control. Section 136 provides that in such cities the title to property held for the benefit of the public free schools shall be vested in the board of trustees, and it shall have the exclusive control of such property. Section 146 provides that any houses or lands held in trust by any city for public free school purposes may be sold for investment in more desirable property by the board of trustees, with the consent of the state board of education. Section 147 provides that cities which have control of their public free schools may provide for buildings therefor. And section 137 provides that all funds arising from the collection of special taxes in such city or town for public free school purposes shall be by the assessor and collector turned over directly to the treasurer of the board of trustees. *Held,* that these statutes did not give a board of trustees the exclusive right to the possession and disposition of funds arising from bonds authorized by a city for the erection and repair of schoolhouses.

[Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. §§ 214, 215; Dec. Dig. § 92.*]

2. SCHOOLS AND SCHOOL DISTRICTS (§ 65*)— SCHOOL BUILDINGS—CONTROL.

Special charter of the city of Palestine, article 2, § 3, provides that all realty, including public school buildings acquired by the city, shall vest in the city. Article 4, § 7, required the superintendent of public buildings to superintend the erection and repair of all public buildings, and have charge of the public schoolhouses; and article 13, § 19, provides that all laws in conflict with this act are repealed. *Held,* that the charter conflicted with, so as to repeal, the provisions of Public School Act (Acts 29th Leg. c. 124) §§ 133, 136, 137, 146, 147, in effect placing the title of all public school property in the board of school trustees, notwithstanding article 11, § 6, of the charter, providing that all laws now in force pertaining to the public free schools are retained in full force, and that the schools shall be maintained and controlled as heretofore, since that provision relates only to the

laws relating to the "management and control" of public schools.

[Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. §§ 162–167; Dec. Dig. § 65.*]

Appeal from District Court, Anderson County; B. H. Gardner, Judge.

Action by W. M. Hamilton and others, trustees, against A. L. Bowers, Mayor, and others. From a decree for defendants, plaintiffs appeal. Affirmed.

Morris & Fowler, for appellants. Campbell & Sewell, for appellees.

PLEASANTS, C. J. Appellants, who compose the board of school trustees for the city of Palestine, bring this suit against the appellees, the mayor, city commissioners, and city treasurer of said city, to compel said defendants to turn over to plaintiffs, or place to their credit, certain funds, the proceeds of the sale of bonds issued by the city of Palestine, and to restrain the defendants from using said funds for any purpose.

The record shows that in 1880 the city of Palestine assumed exclusive control of its public free schools and placed this control in the hands of a board of school trustees. Ever since the control of its schools was assumed by the city, said schools have been under the exclusive management and control of a board of school trustees; the members of the present board being the plaintiffs in this suit.

In May, 1911, at an election held for that purpose, the voters of the city of Palestine authorized the issuance by said city of $20,000 in bonds to provide funds for the erection of a new schoolhouse, and to repair the schoolhouses in said city. These bonds were duly issued and sold, and the funds arising from such sale are now in the hands of the city treasurer, and the mayor and city commissioners were preparing to expend said funds for the purposes for which they were provided, when appellants, claiming that they had the exclusive right to the possession, control, and disposition of the funds, brought this suit for a mandatory injunction, compelling defendants to give them possession of the funds, and restraining defendants from using same for any purpose. Upon the hearing in the trial court, the injunction was refused.

[1] There is no issue of fact in the case; the question presented being whether the appellants are entitled, under the law, to the control and disposition of the funds in question. The following provisions of the public school act of 1905 are pertinent to this question:

"Sec. 133. Control of Independent Free Schools.—All cities and towns which have heretofore, under the act of May 2, 1875, or any subsequent law, assumed control of the public free schools within their limits, and have continued to exercise the same until the present time, or may hereafter determine so to do by a majority vote of the property taxpayers of said city or town voting at an election held for that purpose, may have exclusive control of the public free schools within their limits."

"Sec. 136. Boards of Trustees to Control Schools in Cities and Towns.—In all cities and towns in this state which have assumed or may hereafter assume the exclusive control and management of public free schools within their limits, and which have determined or may hereafter determine that such exclusive control and management of the public free schools within their limits shall be in a board of trustees, and organized under an act of the Sixteenth Legislature, approved April 5, 1879, and acts amendatory thereto, the title to all houses, lands and other property owned, held, set apart or in any way dedicated to the use and benefit of the public free schools of such city or town, including property heretofore acquired, as well as that which may hereafter be acquired, shall be vested in the board of trustees, and their successors in office, in trust for the use and benefit of the public free schools in such city or town, and such boards of trustees shall have and exercise the exclusive control and management of such school property, and shall have and exercise the exclusive possession thereof for the purposes aforesaid: Provided, that where trustees are named other than the municipal corporation itself, in any instrument conveying, donating, bequeathing or devising any money or other property, real or personal, for the benefit of any city or town, this law shall not interfere in any manner with the title or authority of such trustees to or over such money or other property. And such board of trustees shall constitute a body corporate, and shall have full power to protect the title, possession and use of all such property within the limits of such city or town, and may bring and maintain such suit or suits in law or equity in any court of competent jurisdiction, when necessary, to recover the title or possession of any such property that may be adversely held or seized, or to prevent any trespass upon or injury to such property; and the power and authority of any such board of trustees to bring and maintain any suit in relation to the recovery of such property, or of the possession and use thereof: Provided, that the provisions of this article shall not apply to lands belonging to the state upon which houses for school purposes have been built without authority from the state."

"Sec. 146. School Property may be Sold, When and How.—Any houses or lands held in trust by any city or town for public free school purposes may be sold for the purpose

of investing in more convenient and desirable school property, with the consent of the state board of education, by the board of trustees of such city or town; and in such case the president of the school board shall execute his deed to the purchaser for the same, reciting the resolution of the state board of education giving consent thereto, and the resolution of the board of trustees authorizing such sale.

"Sec. 147. Buildings and Sites may be Provided, How.—Towns or cities which have assumed or may hereafter assume control and management of the public free schools within their limits, may also provide for building sites and buildings for such public free schools and institutions of learning, in the manner and under the restrictions and limitations provided in article 486, Revised Statutes, relating to cities and towns."

These provisions of the statute expressly give to the appellants the exclusive control and management of the public free schools in the city of Palestine and places in them, "the title to all houses, lands and other property owned, held, set apart or in any way dedicated to the use and benefit of the public free schools of said city." We cannot, however, agree with appellants that the sections of the act above set out give them the exclusive right to the possession of the funds in question, or the exclusive right to contract for the construction of new schoolhouses, or the repair of those now in use, and take from the city authorities the right to use this money in the construction of a new schoolhouse and the repair of those now in use. Section 147, above quoted, expressly authorizes the city to provide for building sites and buildings for its public free schools; and we think when, as in this case, the city has issued and sold its bonds, and thereby created a fund for the construction of a schoolhouse, it is authorized to use such funds for the purpose for which they were created, and is not required to turn them over to the school trustees.

As before said, there is no express provision of the statute which imposes such duty or obligation upon the city; and such obligation does not arise by necessary implication from the general purpose and intent of the act, considered as a whole. The right to the exclusive control and management of the public free schools and the vestiture of the legal title to all property owned by or dedicated to the use and benefit of such schools do not necessarily carry with them the right to the possession and the disposition of all funds created by the city for school purposes.

It is, we think, significant that section 137 of the act, above mentioned, which directs that "all moneys and funds arising from the assessment and collection of any special taxes in such city or town for public free school purposes shall be by the assessor and collector, or other proper officer of such city or town whose duty it is to collect the taxes, turned over directly to the treasurer of the board of trustees," gives no such direction as to moneys or funds procured by the city by the sale of bonds issued and sold by it under the authority given it under section 147, before quoted, to provide for school buildings. If it had been the legislative intent that all moneys and funds provided by the city for school purposes should be directly turned over to the treasurer of the board of trustees, it would not have confined or limited the provisions of section 137 to moneys or funds arising from the assessment and collection of special taxes. The moneys derived from special school taxes, which are only levied for the purpose of procuring funds to meet the ordinary current expenses of conducting the school, are properly placed in the hands of the trustees, who have the exclusive management and control of the schools, and should have at their disposal the funds necessary to meet the contracts of the teachers employed by them, and the other expenses necessarily incurred by them in the management of the schools; but no such reason exists for giving to the trustees the exclusive right to hold and direct the expenditure of money provided by the city by the sale of its bonds for the purpose of building schoolhouses. On the contrary, it seems to us that the city authorities, upon whom the duty to have constructed all public works and public buildings for the city is imposed by the city charter, which contains numerous provisions safeguarding and protecting the rights of the public in all contracts for public works and buildings, are the proper public agents for the expenditure of funds of this character.

So far as we have been able to ascertain, this question has not been directly decided by any of our higher courts. In the case of Peck-Snead Co. v. City of Sherman et al., 26 Tex. Civ. App. 208, 63 S. W. 340, the plaintiff sued the city of Sherman and the board of school trustees of that city upon a contract for furnishing a heating system for a school building, which was being constructed in said city. The contract was alleged to have been executed by the board of school trustees; and it is further alleged "that said board had in its possession, and was entitled to receive from the city and from the state, at the time the contract was made, ample funds available for such purposes, to wit, about $20,000.00, with which to pay plaintiff the sum mentioned in the contract, as well as to otherwise complete said (school) building." The trial court sustained general demurrers interposed by the defendants and dismissed the suit.

In affirming the judgment of the court below, the Court of Civil Appeals for the Fifth District say: "It is contended by the plaintiff in error that the board of trustees had authority under the statute to contract for

the construction of school buildings. Article 4010, Revised Statues, confers on such boards the same powers, control, management, and government of and over the public free schools within its jurisdiction as may be by law conferred on the city council. Article 4022 gives to the city council authority to construct school buildings. Hence it is argued that the school board had the power to contract for such buildings. Article 4034, Revised Statutes, authorizes the city to provide free school buildings in the manner and under the restrictions and limitations prescribed in article 486, where it is provided that the city council may levy taxes and issue bonds for the purpose of constructing or purchasing public buildings, including building sites and buildings for public free schools. A free school building so purchased or constructed is a public building of the municipality and one of its public improvements. Dwyer v. Hackworth, 57 Tex. 245. Before any contract made by a city for any public improvements, not intended to be paid out of its current revenues, is binding on the city, provisions must be made to meet the obligations of the contract. McNeal v. City of Waco, 89 Tex. 83, 33 S. W. 322. It is clear that the school board had no authority to create or raise a fund to be used in constructing a school building. It is certain that the board could not legally appropriate all the funds coming into its possession to such purposes. The board could use the funds under its control only for the purposes directed by the council or permitted by law. If the city had legally provided a fund for the purpose of constructing the building in question, and had placed the funds at the disposal of the board, then the power of the board to make the contract set out in the petition might be conceded; but no such facts are alleged. * * * We conclude that, as it is not shown that the board was authorized by the city to construct the building or to use any of the funds received or receivable from the city for that purpose, or that it had authority to appropriate any of the state funds to that end, the board was without legal power to enter into the contract relied on by plaintiffs in error."

While the point was not directly before the court, this opinion seems to hold that the city is not required to place at the disposal of the school trustees funds which it has provided for the construction of school buildings.

[2] It is contended by appellees that, whether this construction of the statutes before set out is sound or not, the appellants have no right to the possession and disposition of the funds in controversy, because the special charter granted by the Legislature to the city of Palestine in 1909 repealed or superseded, so far as they applied to said city, those portions of the statutes which put the title to all school property, in cities that have assumed control of their public free schools, in the board of school trustees of such cities. Section 3, art. 2, of said special charter is as follows: "Real Estate Owned by the City.—All real estate owned in fee simple, title, or by lessor estate, all public buildings, school houses, streets, alleys, and all property of any kind and description which has been or may hereafter be granted, donated, purchased or otherwise acquired by the city of Palestine through any means or agency and all causes of action, choses in action, rights or privileges of every kind and character, all property of whatsoever character now held or used by the city of Palestine for public use, or in trust for the public, shall vest in and inure to the city of Palestine under this act, and all suits and pending actions to which the city of Palestine heretofore was and now is a party plaintiff or defendant shall in no way be affected or terminated by the provisions of this act, but shall continue unabated."

This charter also creates the office of superintendent of streets, public improvements, and public buildings for said city; and section 7 of article 4, which prescribes the duties of such superintendent, provides that he "shall see that all contracts therefore are faithfully complied with; that he shall superintend all public work and the erection, making, repairing, and reconstruction of all public buildings or improvements;" and that he "shall have charge of and supervision over the city hall and public school houses."

Section 19 of article 13 of the charter reads as follows: "All laws and parts of laws which are in conflict with this act are hereby repealed, but all laws and parts of laws pertaining to the city of Palestine, not in conflict with this act, are hereby expressly preserved and retained in force."

We think these provisions of the charter are in conflict with the provisions of the statute placing the title of all school property in the board of trustees, and that the title to the public school buildings in the city of Palestine is, by said charter, vested in the city. We do not think that section 6 of article 11 of the charter, which provides that "all laws now in force, pertaining to the public free schools of the city of Palestine, are hereby retained in full force and effect and said schools shall be managed and controlled as heretofore," is in conflict with the provision, before quoted, vesting the title to all public schoolhouses in the city. The section last quoted, which retains in force all laws relating to public free schools of the city of Palestine, should be constructed as referring only to such laws as relate to the management and control of the public schools. Such construction is necessary to harmonize the several provisions of the act and give effect to the whole; and this is the well-settled rule for the construction of statutes. Higgins v. Rinker, 47 Tex. 401; Morgan v. Davenport, 60 Tex. 234. If this

construction of the charter is correct, and the title to the public schoolhouses of the city of Palestine is vested in the city, it is clear that the appellants have no right to the funds provided by the city for the construction or repair of schoolhouses.

It follows from the views above expressed that the judgment of the court below should be affirmed; and it has been so ordered.

Affirmed.