BOARD OF TRUSTEES OF ALPINE INDE-
PENDENT DIST. et al. v. JACOB.
(No. 5334.)

(Court of Civil Appeals of Texas. San Antonio. Oct. 28, 1914. Rehearing Denied Nov. 18, 1914.)

SCHOOLS AND SCHOOL DISTRICTS (§ 79*) — CONTRACTS — RIGHT TO ENFORCE — EXISTENCE OF FUND FOR PAYMENT.

A contract by the officers of an independent school district to pay for architect's plans for a schoolhouse for which bonds had not yet been voted was unenforceable, where the bond issue was defeated, and there were no other funds from which the payment could be made, although an issue of bonds was subsequently authorized and sold, and the proceeds were invested in a different plan of house from the one originally desired; it being contemplated by Rev. St. 1911, arts. 2837–2839, providing for elections to determine whether schoolhouse bonds shall be issued and for a sale of bonds, that contracts involving an expenditure of the proceeds shall be made only after the bonds have been sold, and article 2853, which invests the trustees of independent school districts with the powers held by a council or board of aldermen in respect to certain school matters, not giving them control of any moneys except those raised in a specified way to be used for specified purposes.

[Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. §§ 188–191; Dec. Dig. § 79.*]

Appeal from Bexar County Court for Civil Cases; John H. Clark, Judge.

Action by Donald R. Jacob against the Board of Trustees of Alpine Independent District and others. From a judgment for plaintiff, defendants appeal. Reversed and remanded.

Martin J. Arnold and T. J. Murray, both of San Antonio, for appellants. Marcus W. Davis, Geo. M. Mayer, and Houston, Boyle & Storey, all of San Antonio, for appellee.

FLY, C. J. This is a suit instituted by appellee against the board of trustees of the Alpine independent school district, the district itself, and Henry T. Phelps to recover the sum of $400, alleged to be due for the plans of a certain schoolhouse prepared by Phelps at the instance of said board of trustees, which claim, it was alleged, had been assigned by Phelps to appellee for a valuable consideration. It was alleged that the plans and specifications for the school building were prepared by Phelps, and were approved and accepted by appellants, and that they promised to pay the sum of $400 for the same, but refused and neglected to pay the same. Appellants filed a general demurrer and special exceptions, and answered denying their authority to make the contract with Phelps; that Phelps knew that the money to build the schoolhouse was to be raised by the sale of certain bonds, and agreed that he would not charge for the plans unless the bonds were sold and a contractor obtained who would build the house for $16,000; that the bond issue was illegal, and no responsible contractor could be found who would build the house for $16,000. The trustees denied personal liability, and that any assignment of the claim had ever been made by Phelps to appellee in good faith and for a valuable consideration. Phelps pleaded that the contract for the plans and specifications was unconditional; that the plans were received and accepted by appellants; that it was true that the bond issue was illegal; that he did not guarantee that the schoolhouse could be built for any specified sum, but that if bids had been sought by appellants the building could have been erected for $16,000.

There is no allegation in the petition that appellants had any local school funds, or that they had any funds of any character, and the presumption would be indulged that the independent school district had no funds except the state and county available school fund, which could be used for no other purpose than the payment of teachers' and superintendents' salaries and fees for taking scholastic census. Article 2772, Vernon's Sayles' Stats. It was proved that the bonds that had been voted to erect a schoolhouse were invalid, and could not be sold. The school district therefore had no funds from the sale of bonds with which to pay the demand of Phelps. The evidence showed that the second issue of bonds were sold, and the entire sum realized from their sale was invested in a different plan of house from the one originally desired. The last issue of bonds was entirely distinct from that first issued.

Articles 2837 and 2838, Rev. Stats., provide for elections to determine whether schoolhouse bonds shall be issued, and when such bonds have been voted for, it is provided, in article 2839, that they shall be examined by the Attorney General and registered by the comptroller of public accounts, and, when sold to the highest bidder, the purchase money shall be placed in the county treasury to the credit of the school district. The pur-

poses for which the money should be used is fully specified to be "in payment of accounts legally contracted in buying, building, equipping, or repairing the schoolhouse or schoolhouses for such district, or in the purchase of sites therefor." It is clearly contemplated in the law cited that the contracts shall be made after the bonds shall have been issued and sold, and that the money arising from such sale shall be disbursed only to satisfy and meet such contracts.

In article 2853, Vernon's Sayles' Statutes, it is provided that the trustees of independent school districts "shall in general be vested with all the powers, rights and duties in regard to the establishment and maintaining of free schools, including the powers and manner of taxation for free school purposes that are conferred by the laws of this state upon the council or board of aldermen of incorporated cities and towns." It would follow that decisions as to the powers, duties and liabilities of a city incorporated for school purposes would be applicable to the board of trustees of an independent school district. Peck-Smead Co. v. City of Sherman, 26 Tex. Civ. App. 208, 63 S. W. 340.

There can be no doubt that the amount due for plans and specifications could be paid out of the money arising from the sale of schoolhouse bonds, because the plans would be necessary in building the schoolhouse. Davis v. City of San Antonio, 160 S. W. 1161, and authorities therein cited. If there had been any such bond money in the hands of the trustees, the claim for the amount due for plans and specifications would be a charge upon it, and appellee could compel payment thereof. But there is no allegation or proof that any money arising from the sale of the bonds, or any other money, was in the hands of the board of trustees. On the other hand, the testimony shows that the bonds were not sold, and could not be sold, because they were invalid. Phelps knew that there was no money when he contracted with appellants, and knew that their only means of raising the money was through the sale of the bonds, and it would not matter whether anything was said about his money coming out of the bond money or not. He does not claim that appellants had any funds in their hands that could be used for the payment of his debt. It is not claimed that the tax permitted for the purchase of sites and the purchasing, construction, repairing, or equipping of public free school buildings authorized in article 2857 had been levied, and that a fund arising therefrom was in the hands of appellants.

In the case of Crowell Independent School Dist. v. Bank, 163 S. W. 339, the district was sued for a balance due on a schoolhouse, and the Court of Civil Appeals of the Second District, after quoting article 2857, held:

"Taxes so raised constitute the only fund which could be used for the purposes stated. The petition filed by the plaintiff in this case contained no allegation that such a tax had been levied by the board of trustees, and no attempt is made in the petition to show any funds belonging to the Crowell independent school district which would be subject to the payment of the debt for which this suit was instituted."

At the time the contract was made appellants had no funds that could be appropriated to build a schoolhouse, because the bonds had not been passed on by the Attorney General and no money could be realized from them. There was no evidence tending to show that there were other funds in the hands of the trustees that could be used in erecting a schoolhouse. Peck-Smead Co. v. City of Sherman, 26 Tex. Civ. App. 208, 63 S. W. 340.

While article 2853, Rev. Stats., invests the board of trustees of independent school districts with the same powers in maintaining and establishing free schools and taxing for school purposes as are held by a council or board of aldermen, it does not give them any moneys except those raised in a certain way to be used for certain purposes, and there was no allegation or proof that any such money was on hand. There is no merit in the proposition that the money sued for was not a debt, but current expenses to be paid out of current revenue. Unlike cities, a board of school trustees can have no current expenses except those for the maintenance and support of free schools as set out in the statutes. However, if the money sued for was a part of the current expenses, appellee has failed to show that there was a fund out of which the sum could be paid.

We are not certain that the case has been fully developed, and will not, therefore, render judgment.

The judgment is reversed, and the cause remanded.