BONE v. BLACK et al. (No. 780.)

(Court of Civil Appeals of Texas. Amarillo. Feb. 27, 1915. Rehearing Denied March 27, 1915.)

1. SCHOOLS AND SCHOOL DISTRICTS ⊂⇒80 — PUBLIC SCHOOLS—CONTRACTS.

Const. art. 7, § 3, provides that the Legislature may authorize an additional ad valorem tax to be collected within all school districts for the erection of school buildings, provided a majority of the taxpaying voters shall vote for such tax. Vernon's Sayles' Ann. Civ. St. 1914, art. 2839, provides that, on the vote of a majority of the taxpayers voting, bonds may be issued by the district and sold to the highest bidder; the purchase money being placed in the county treasury to the credit of the school district. Article 2843 provides that the funds arising from the sale shall be apportioned after they are placed in the treasury. Article 2853 invests the trustees of independent school districts with the powers of taxation conferred by law upon the council or board of aldermen of incorporated cities. Held, that as, until the bonds are sold, the voters might discontinue the tax, the directors of an independent school district cannot until the sale of the bonds enter into a valid contract for the erection of the building.

[Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. §§ 191–194; Dec. Dig. ⊂⇒80.]

2. SCHOOLS AND SCHOOL DISTRICTS ⊂⇒82 — BUILDINGS—ERECTION—CONTRACTS.

A contract for the erection of a school building cannot be enforced, where it did not appear that the plans and specifications provided for the lighting, heating, and sanitation of the building as required by Acts 33d Leg. c. 120 (Vernon's Sayles' Ann. Civ. St. 1914, arts. 2904b–2904q).

[Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. §§ 197, 198; Dec. Dig. ⊂⇒82.]

Appeal from District Court, Motley County; Jo. A. P. Dickson, Judge.

Action by Fred Bone against H. R. Black and others. From a judgment for defendants, plaintiff appeals. Affirmed.

Jones & Miller, of Amarillo, and T. T. Bouldin, of Matador (A. M. Mood, of Amarillo, of counsel), for appellant. G. E. Hamilton, of Matador, and D. E. Decker, of Quanah, for appellees.

HUFF, C. J. The appellant, Fred Bone, presented a petition to Hon. J. A. P. Dickson, judge of the Fiftieth judicial district, against H. R. Black and six others, as trustees of the Roaring Springs school district, also making the Maxwell-Stewart Construction Company a party defendant, praying for a mandatory injunction, requiring the school board to comply with the terms of a contract alleged to have been made between the trustees and Bone. Upon the presentation of the petition to the district judge, he set the case for rehearing in chambers for December 29, 1914. On that date the Maxwell-Stewart Construction Company was dismissed, and the court heard the evidence on the issues between Bone and the trustees, the judge hearing the case refused the prayer for injunction, and the appellant appeals to this court from that order.

As pertinently suggested by appellant, this record presents the issue: "Can a school board contract for a building after bonds therefor are issued, and prior to their sale, the work to commence when the funds are available?" We will later on suggest another issue not raised by either party.

A short statement of the facts will sufficiently present the issues without setting out the pleadings. There appears to be no controversy over the organization of the Roaring Springs district for school purposes under the statutes, or that H. R. Black and the six other named parties properly constituted the trustees of that district and were acting as the school board therefor; that the school district voted for an issue of $17,000 worth of bonds for the purpose of erecting a public school building for that district; that they were issued, and counsel agreed in the court below "that the bonds described in the plaintiff's petition were approved by the Attorney General of the state of Texas, July 8, 1914, and were registered in the comptroller's department of the state of Texas, on July 11, 1914." It appears the board advertised for bids, and appellant, among others, submitted a bid for the building of the schoolhouse according to certain plans and specifications, and that thereafter his bid was accepted. On the 10th day of July, 1914, a contract in writing was signed by Bone and the president and secretary of the board of trustees, whereby Bone agreed to erect and complete a three-story brick building in Roaring Springs, "work to begin when parties are notified the money is available," and to be completed and ready for occupancy in 90 working days, according to the plans, etc. The price to be paid was $13,947.80. The trustees, it appears, in good faith made every effort to sell the bonds through the board of education at Austin and others. The authorities at Austin refused to take or buy the bonds. The trustees sent two men to Austin in order to effect the sale, but their efforts were fruitless. They advertised the bonds in the New York papers, and tried in several markets and cities to sell them. Owing to the depression in the money market, occasioned by the recent European war, a sale by the board could not be effected. The trustees proposed to appellant that he try to use the bonds or sell them. Appellant undertook to find a buyer, but was unable to place the bonds or sell them. The board was anxious that Bone should build the house, and desired that he should do so, and the district was badly in need of the building. It appears that, owing to the fact that a railroad had recently been constructed into and had terminated at Roaring Springs, the population had rapidly increased, and the buildings in the place were unsuited for school purposes, and the children were scattered in different houses. The need for the building was pressing.

After the failure to sell the bonds as above set out, two construction companies thought, if they could get the contract to build the house, they could sell the bonds. Various negotiations were had, unnecessary to set out. It finally resulted, on or about the 5th day of December, 1914, in about this situation: Judge Decker, who is in some way interested in the town of Roaring Springs, desirous with clients of his in having the building erected, undertook to aid the board in effecting a sale of the bonds, made a trip to Austin in the interest of the sale, but was unable to effect one. He was given authority by the board to procure the bonds while in Austin and take possession of them. Through his instrumentality, and that of others, Maxwell & Stewart, as a copartnership, agreed to erect the building for $15,300, and to sell the bonds and place the money in the bank to the credit of the district. There was a contract drawn up and signed between Maxwell & Stewart and the board of trustees with reference to the building. Both the contract and the bonds were placed in the hands of Judge Decker, and when the money was paid on the bonds—that is, their face value, plus the accrued interest, in the bank to the credit of the district—he (Decker) was to deliver the contract, and the contractors are then to proceed to the construction and to receive their payment according to the terms of the contract, by warrants drawn as required by law. We believe this is about the situation when the injunction was sought, as shown by the record.

[1] Art. 7, § 3, of the Constitution, now provides that:

The "Legislature may authorize an additional ad valorem tax to be levied and collected within all school districts, heretofore formed or hereafter formed, for the * * * maintenance of

public free schools, and the erection and equipment of school buildings therein: Provided, that a majority of the * * * property tax paying voters of the district, voting at an election to be held for that purpose, shall vote such tax, not to exceed in any one year fifty cents on the $100.00 valuation," etc.

In conformity therewith, the Legislature, by article 2858, Vernon's Sayles' Civil Statutes, provided that a petition may be presented to the board of trustees by 20 or more of the qualified taxpaying voters of a school district, to determine whether the qualified voters desire the issuance of bonds mentioned in the petition. Then follow the articles prescribing the method of holding the election, etc. Article 2857 provides for the levy of taxes to pay the bonds. Article 2839, if a majority of the votes cast are in favor of the bonds, bonds may be issued on the faith and credit of such district. The bonds shall be examined by the Attorney General and registered by the comptroller. "They shall be sold to the highest bidder, and the purchase money shall be placed in the county treasury to the credit of said school district, and the money shall be disbursed upon warrants issued by the trustees of said district, approved by the county superintendent, in payment of accounts legally contracted in buying, building, equipping or repairing the schoolhouse * * * for such district, or in the purchase of sites therefor." Article 2842 provides, after the bonds have been issued and sold and the tax levied, it is declared unlawful to hold an election to determine whether the tax shall be discontinued or lowered until the bonds are fully paid. Article 2843 provides that funds arising from the sale shall be apportioned after it is placed in the treasury for the purpose of building after the manner provided by law for the division of the funds for the maintenance of public schools therein. Article 2853 invests the board of trustees in independent districts with the rights and duties in regard to the establishing and maintaining free schools, including the powers and manner of taxation conferred by law upon the council or board of aldermen of incorporated cities and towns. Article 2856 declares that school districts in certain instances shall be governed in the general administration of their schools by the laws which apply to common school districts, and funds of such districts should be kept in the county depositories and paid out on the order of the trustees, approved by the county superintendent. We are not informed in this case whether the district had fewer than 150 scholastics according to the last census. Article 2871, and other portions of the general school laws, evidence the fact that independent school districts and cities and towns having charge of the common schools are subject to the general laws with reference to common schools.

The scope and meaning of article 2853, with reference to the powers of trustees in the management of public schools in the district and the power to contract with reference to buildings therein, is discussed in Peck-Smead Co. v. City of Sherman, 26 Tex. Civ. App. 208, 63 S. W. 340, and Hamilton v. Bowers, 146 S. W. 629. They may issue bonds to obtain money to build. A tax must be levied to pay the bonds in order to make them valid. If the money is not and cannot be obtained on the bonds, the obligation of a contract to pay the price of the house is void, for the reason there is no fund out of which it can be paid.

"It is clearly contemplated in the law cited that the contract shall be made after the bonds shall have been issued and sold, and that the money arising from such sale shall be disbursed only to satisfy and meet such contracts." Board of Trustees, Alpine District, v. Jacob, 170 S. W. 795.

Appellant urges that the above expression of the court is dicta. It may be that it was not necessary to hold in that case that the bonds must be sold, inasmuch as the issuance of the bonds in that case was illegal. We nevertheless think the proposition stated is a correct one. It is manifest from a reading of the statutes that it was the intention of the Legislature not to confer any power upon the trustees to contract and to create an obligation against the district until funds are available. At what point, if this is not a correct proposition, will the trustees be vested with power? Certainly not before the petition presented for an election, or before a vote authorizing the tax. It could not be before the bonds are approved and registered by the comptroller. It takes all these to make a valid bond. When this is done, there is nothing to pay the amount due on the contract. The bonds must be sold, and the money in the treasury. When that is done, the trustees may contract. Up to that time they are not vested with authority to contract for the building.

Article 2842 indicates that until the bonds are sold the taxes levied to pay them may be discontinued by vote. If before they are sold the tax should be discontinued, the bond will be valueless. Hence a contract before they are sold does not bind the fund. There is no power in the trustees to give bonds for the building. They must be sold, and the money placed in the treasury, and drawn out upon the proper order. The trustees have no power or authority over these bonds until they are sold. No discretion is vested in them when they shall contract. It must be done when the money is in the treasury for that purpose, or is available; otherwise, they can create no obligation against the district. We think it is a general rule "that such contract can be entered into, only to the extent of funds provided and available for that purpose," by trustees. 35 Cyc. 951, 952 (A) note 97.

As we understand, our Supreme Court limits the power to common school trustees to contract with a teacher to such funds only

as are available for that year. True, the statute then under investigation expressly stated they could not create a deficiency debt against the district. Collier v. Peacock, 93 Tex. 255, 54 S. W. 1025; Bank v. March, 51 S. W. 266. The statute in this instance does not expressly provide that the trustees shall not create a deficiency debt, but the Constitution and the statutes clearly imply such a prohibition. True, provisions were made to obtain funds to build the house. This the trustees had no power over, but these funds were unavailable, and the power of the trustees, until so available, was not vested in them to contract. Peck-Smead Co. v. City of Sherman, 26 Tex. Civ. App. 208, 63 S. W. 340.

We see no equity in behalf of the appellant. He contracted when he knew there were no available funds, and stipulated that he was not to begin work until the funds were available. We do not think the board had the right at such time to bind the district indefinitely on the contract. Times change; the price of material fluctuates. It should not be, and we do not believe it is, the policy of the law to so permit the board to burden the probable future available funds of the district upon an indefinite contract. This case is an illustration of a hardship on the district, should such contract be permitted. The state would not buy the bonds. The money markets were so demoralized on account of the European war that the bonds could not be sold. Appellant himself could not sell or place the bonds. For nearly five months the children were out of a schoolhouse, the taxpayers taxed to pay the interest and sinking fund, and when the first opportunity is presented to sell the bonds, and to parties who are willing to place them and get the money, provided they can get the contract to build, appellant, setting up his purported equities, seeks to enjoin the board from so selling the bonds and entering into the contract. He could not either buy or sell the bonds, could not comply with the contract to construct, but he is unwilling that any other should do so. We do not think the trustees have the power to place the district in such a situation, and that their purported act in attempting to contract with appellant was ultra vires.

[2] The appellant shows no equity in his bill or by the evidence, for the further reason that he does not show that the plans and specifications of the building provided for the lights, heating, sanitation, etc., of the building, such as the act of the Thirty-Third Legislature requires. Chapter 120, p. 244, Acts 1913. He does not show that the board had a permit to erect such a building as he contracted to build. Section 13 of the act provides that as to buildings to be erected for school buildings for common school districts the county superintendent of the county, and in independent school districts the superintendent of public schools in that district, shall issue a permit showing that the plans, etc., conform to the requirements of the act. Section 14 of the act provides that no person whose duty it is to distribute funds shall pay or authorize payment of public money for the construction of any school building until the board of trustees has secured a legal permit for such work. A disbursing officer, who so pays out such funds, is made personally liable for the money so paid. See Vernon's Sayles' Civil Statutes, arts. 2904b to 2904q, inclusive. If there was no such permit, as provided for by the above law, to erect the building, which appellant claims he had a contract to erect, then the contract is void for that reason. There is no allegation that there was such a permit, nor was there any proof to that effect.

We think the trial court properly refused the injunction, and the case will be affirmed.