# W. L. PEARSON & CO. v. HUTCHINSON COUNTY.

## No. 3776.

Court of Civil Appeals of Texas. Amarillo.
April 13, 1932.

Rehearing Denied Sept. 7, 1932.

Cooper & Lumpkin, of Amarillo, for appellant.

Jos. H. Aynesworth, of Borger, and Madden, Adkins, Pipkin & Keffer, of Amarillo, for appellee.

RANDOLPH, J.

The parties herein will be styled as in the trial court, Hutchinson county as plaintiff and Pearson & Co. as defendant.

This suit was filed by the plaintiff to recover of the defendant a large amount of money which had been paid by plaintiff to defendant upon certain road contracts. The case was tried before a jury, and on their answers to issues submitted, the court rendered judgment for the plaintiff. Defendant has regularly appealed to this court.

The plaintiff's petition is necessarily

lengthy, but we will set out substantially the allegations of same for a proper understanding of the questions before us.

Plaintiff's petition alleges that its commissioners' court, as constituted in the early spring of 1927, resolved to cause certain highways to be constructed in Hutchinson county and caused its engineer to prepare certain plans of the highways to be constructed, namely, the Stinnett Road South, a paved highway from the city of Stinnett south to the town of Borger, and to the south boundary line of Hutchinson county; the Stinnett Road North, a graded highway from the town of Stinnett to a point some seven or eight miles north; and caused to be prepared and published in a newspaper published in Hansford county, Tex., and also to be posted at one or more places in Hutchinson county, a notice to contractors notifying them that on March 8, 1927, said commissioners' court would consider any and all sealed bids previously submitted by the contractors; that on March 8, 1927, it did consider bids previously submitted, including the bid of the defendant company, and on the same day passed a resolution accepting the bid of the defendant company and thereafter, on the 14th day of March, 1927, said commissioners' court and defendant company executed a written contract, supposedly pursuant to the bid and acceptance, and thereafter defendant company performed labor and furnished material at its own cost for the construction and improvement of the two roads and also improved two other graded roads known as the Stinnett Road East and the Electric City-Sanford Road, but these two roads were not contemplated at the time of the original transaction, no plans were ever prepared for them, and no bids called for or received, and that these two roads were constructed by the defendant company without any attempt on the part of the then commissioners' court to call for or receive competitive bids. That from time to time as defendant progressed with its work on the roads, plaintiff paid it large sums of money, paying in the aggregate more than $1,000,000.

Among other things, plaintiff alleges that all of the proceedings had in connection with the construction of the highways and the payment by plaintiff to defendant of the money were illegal and void, in that there was regularly published and circulated in Hutchinson county at all times material, a newspaper of general circulation, and that under the law governing, notice to bidders should have been published therein, and that the purported contract was let without competitive bids, in that prior to the bidding, Hutchinson county caused to be prepared and distributed to contractors potentially interested in the project, two separate and distinct sets of proposals, one set being a proposal to be used by contractors in submitting bids on the paved highway referred to as the Stinnett Road South, and the proposals for the other to be used by contractors submitting bids on the graded highway, referred to as the Stinnett Road North. and that the proposals so furnished contained the definite items and character and approximate amount thereof of the materials to be removed and materials furnished and called for a bid upon each and every item so specified, and that a number of the contractors submitting bids did so upon either one or the other of the two roads, not submitting bids upon both roads, namely, the graded road and the paved road, as one project, but that the defendant company, while submitting bids upon each and both of the proposed roads, specifically provided in each bid so submitted that the same was being submitted upon the express condition that it also be awarded the contract covered and included in the bid on the other road and also be awarded all additional road work that plaintiff might elect to cause to be done, and that the proposals or bids so submitted by defendant company was not therefore in competition with any other bids submitted and not in compliance with the proposal of the plans, purposes, and intention of the commissioners' court. Further that all the proceedings were and are void for the reason that at the time plaintiff, acting through its commissioners' court, accepted the bid of defendant and accepted and approved its $700,000 bond for the performance of the road work on or before December 31 1927, and did not have the funds with which to pay for said work or any part of same, and it was not contemplated that it would pay the same out of current revenues, and that the transaction had the effect of creating a debt against plaintiff without any provision having been made for the retirement of the same as required by the Constitution of this state governing in such matters. Further, that said bids were not competitive, in that all the contractors submitting bids knew at the time of the financial condition of Hutchinson county, and that legitimate prospective bidders who otherwise would have submitted a bid were deterred and prevented from bidding due to the fact that no provision had been made for the payment of the obligation the county proposed to incur for the improvement of its highways, and that those who did bid submitted bids far in excess of the amounts for which they would have otherwise submitted them, also to the fact that they realized that in any event there was a great uncertainty as to when, if ever, they would receive pay for their labor and material.

Plaintiff alleges other grounds rendering the entire transaction void, some of which will be discussed later.

It is further specifically alleged in said petition that should the trial court hold the proceedings void and then be of the opinion that the county could not retain the benefits and recover of the defendant all of the money that

it had paid it, then and in that event defendant was entitled to relief solely upon the basis of quantum meruit, and in such event plaintiff had paid the defendant under the terms of the purported contract approximately $500,000 in excess of the amount to which defendant would be entitled upon such basis, and prayed for general relief in this particular. Further, plaintiff specifically sets out the prices paid the defendant for certain material furnished and labor performed, alleging in certain particulars the price to which the defendant was entitled if paid upon a quantum meruit basis.

As stated, the case was submitted to a jury upon special issues and judgment rendered based on their answers thereto.

We will not attempt to discuss the questions presented in the order in which they come in plaintiff's brief, but will discuss them in the order material to a decision of the case as we view them.

Whether or not the contract of March 14, 1927, and the supplemental contract of March 15, 1927, were violative of article 11, § 7, of the Constitution of the State of Texas, in that the transactions reflected in the contracts and the proposals or bids of the defendant and acceptance of same by the commissioners' court of Hutchinson county on March 8, 1927, had the effect of creating a debt against the county without any provision being made for levying and collecting a sufficient tax to pay the interest thereon and provide at least 2 per cent. as a sinking fund, is not entirely the question before us. It is clear from the evidence that prior to March 8, 1927, the commissioners' court of Hutchinson county caused plans to be prepared for the construction and improvement of certain highways, one being the paved highway known as the Stinnett Road South, and the other being the graded highway known as the Stinnett Road North. The notice to the contractors that the commissioners' court caused to be published in a newspaper in Hansford county, and caused to be posted at one or more places in Hutchinson county, recites:

"Sealed proposals addressed to the Commissioners' Court of Hutchinson County, Texas, for the improvement of certain highways in Hutchinson County, will be received at the office of the County Judge at Stinnett, Texas, until 10 o'clock A. M., March 8, 1927.

"Detailed plans and specifications of the work may be seen for examination and information may be obtained at the office of the County Engineer at Stinnett and at the office of the County Judge at Stinnett, Texas.
G. Kallous

"A certified, or cashier's check, for five per cent of the amount bid made payable without recourse to the order of the County Judge of Hutchinson County, Texas, must accompany each proposal, as a guaranty that the bidder, if successful, will enter into a contract and make bond in accordance with the requirements of the specifications. The right is reserved by the Commissioners' Court to reject any and all bids and to waive all technicalities.

"Proposals shall be submitted in sealed envelopes and marked 'bid for construction of highway.'

"All bids received will be retained by the County and will not be returned to the bidders."

The jury, in answer to a special issue, found that the commissioners' court called for separate bids on the roads known as Stinnett Road North and the paved road south.

On March 8, 1927, the commissioners' court opened and considered the defendant's bid and passed an order that all of the road work as advertised be awarded to the defendant and that bond in the sum of 100 per cent. of the contract price be submitted. The contract was duly executed and the required bond given.

The work contracted to be done under the two contracts was apparently done and was paid for according to the contract. This suit is not only to have the court declare the contract between Hutchinson county and defendant void, but is in the alternative to permit the county to recover the excess paid by it above a quantum meruit allowance to the defendant for the work done and materials furnished by it.

The jury also found in answer to issues submitted to them that at the time the proposals and bid of defendant was accepted, namely, March 8, 1927, Hutchinson county did not have within its immediate control sufficient funds with which to pay for the work contemplated to be done; that at the time it was not in the reasonable contemplation of the parties that the work to be performed and material furnished would be paid for out of the current funds for the year 1927; that the various contractors submitting bids knew of the financial condition of Hutchinson county at that time; that such knowledge deterred bidders from bidding who otherwise would have bid; that at the time the written contracts of March 14 and 15, 1927, signed by Hutchinson county and the defendant, were executed, that Hutchinson county did not have within its immediate control sufficient funds with which to pay for the work contemplated to be done under such contracts; that it was not contemplated that such work and material would be paid for out of current revenues to be acquired by Hutchinson county; that the commissioners' court did not, on or before March 8, 1927, pass any order or judgment providing for the raising of money with which to

pay for the labor performed and material furnished for the construction of the then contemplated roads, including the Stinnett Road North and the Stinnett Road South; that the contractors submitting bids then knew of such conditions.

The evidence in this case shows a completed contract—an executed contract. The work was done, accepted, and paid for. As stated, the present commissioners' court, in the last analysis, is seeking to recover a claimed excess paid by Hutchinson county over and above what they alleged should have been charged for the work done and material furnished. No fraud, accident, or mistake on the part of the then commissioners' court on the one hand, and the defendant Pearson & Co. on the other, in the entering into and consummation of the contract, is charged by the plaintiff herein.

Article 11, § 7, of the Constitution of Texas, provides as follows: "All counties and cities bordering on the coast of the Gulf of Mexico are hereby authorized upon a vote of two-thirds of the taxpayers therein (to be ascertained as may be provided by law), to levy and collect such tax for construction of seawalls, breakwaters or sanitary purposes, as may be authorized by law, and may create a debt for such works and issue bonds in evidence thereof. But no debt for any purpose shall ever be incurred in any manner by any city or county unless provision is made, at the time of creating the same, for levying and collecting a sufficient tax to pay the interest thereon and provide at least two per cent as a sinking fund; and the condemnation of the right of way for the erection of such works shall be fully provided for."

The contract between the appellant and appellee, dated March 14, 1927, is, in full, as follows:

"The State of Texas, County of Hutchinson.

"This Memorandum of Agreement made and entered into by and between Hutchinson County, Texas, acting by and through its County Judge and County Commissioners pursuant to resolutions duly passed by the Commissioners of said County, and W. L. Pearson & Company, a corporation, incorporated under the laws of the State of Texas, acting herein by and through Sam R. Merrill, its Vice President, hereinafter styled the Contractor:

"Witnesseth:

"Whereas, Hutchinson County, acting by and through its Commissioners' Court, has heretofore determined that it is to the best interest of said County and the inhabitants thereof that certain public roads of the County be improved; and,

"Whereas, the said Commissioners' Court has heretofore had prepared and filed with the County Clerk certain plans and specifica-tions covering the proposed road improvement, a copy of which is attached hereto and made a part hereof, and,

"Whereas, said Commissioners' Court has heretofore caused to be published in the manner and for the length of time required by law, a certain Notice to Contractors, asking for sealed proposals addressed to the Commissioners' Court of Hutchinson County for the improvement of such public roads in accordance with and as described in said plans and specifications, to be received at the office of the County Judge of Hutchinson County at Stinnett, Texas, until 10 o'clock A. M., on the 8th day of March, A. D. 1927, a copy of which Notice to Contractors is also hereto attached and forms a part hereof; and,

"Whereas, in response to such notice certain bids and proposals were received, and were by the Commissioners' Court duly and publicly opened and considered on said 8th day of March, A. D. 1927; and,

"Whereas, the proposal of W. L. Pearson and Company was, and is deemed by the Commissioners' Court to be the lowest and best bid so received; and,

"Whereas, said proposal of W. L. Pearson & Company consists of two instruments, both executed on the forms provided for that purpose in accordance with the Notice to Bidders and the specifications, one of which instruments is headed or designated 'Proposal to the Honorable Commissioners' Court for Building and Grading and Drainage Structures in Hutchinson County Stinnett North,' and states the unit prices at which said bidder proposed to construct the grading and drainage on that portion of the proposed improvement extending from Stinnett North towards the Hansford County line; and the other of which instruments was headed or designated 'Proposal to the Commissioners' Court for building a paved road in Hutchinson County, Texas,' and states the unit prices at which the said bidder proposed to construct all other portions of said proposed road improvements as shown and described in said proposal, plans, and specifications; and,

"Whereas, said proposal of W. L. Pearson & Company was on the 8th day of March, A. D. 1927, by resolution of the Commissioners' Court duly accepted as the lowest and best bids received, and the attorney for Hutchinson County was directed to prepare and submit to the Commissioners' Court a form of contract to be entered into by said County with said W. L. Pearson & Company;

"Now, therefore, This Contract is made by and between the parties as follows:

"I. The said W. L. Pearson & Company, as Contractor, agrees and obligates itself

that, for and in consideration of the prices and agreements mentioned in the proposal hereto attached and made a part hereof, it will at its own proper cost and expense, do and perform all the work necessary for the improvement of roads in Hutchinson County in accordance with the provisions of the attached notice to contractors, proposal, plans and specifications, all of which are made a part of this contract, and in full compliance with all the terms of the specifications and the requirements of the Engineer.

"II. The Contractor agrees to begin work within ten days after order from the Commissioners' Court directing it to do so, and to complete the same within nine and one-half months thereafter.

"III. The Contractor shall not be required to begin work until funds are available to pay for the same; nor, shall it be required to do any work in excess of the funds available for that purpose.

"IV. All grading and drainage structures on that part of the road proposed to be improved which leads from Stinnett North towards the Hansford County line, are to be paid for at the unit prices named in that portion of the proposal designated "Proposal to the Honorable Commissioners' Court for building grading and drainage structures in Hutchinson County, Texas,—Stinnett North; and all work done by the Contractor shall be paid for at the unit prices contained in that portion of the proposal designated 'Proposal to the Honorable Commissioners' Court for building a paved road in Hutchinson County, Texas,' or, as otherwise provided in the specifications.

"V. The County, in consideration of the full and true performance of the said work by said Contractor, hereby agrees and binds itself to pay to said Contractor, the prices set forth in the attached proposal as above stated, and in the manner provided in the attached specifications.

"VI. It is understood and mutually agreed by and between the contracting parties, that the plans, specifications and proposals now on file and which are attached hereto, together with the contractor's bond, are to all constitute and are a part of this contract, and same are here now attached and here referred to and made a part hereof for all purposes.

"VII. It is further expressly contracted, agreed and understood by and between the parties hereto, that in the event it should develop during the construction of the roads herein contemplated, that any work or material, the price or quantity of which is not mentioned and provided for in the specifications or plans constituting a part of this contract, is found necessary to be performed or furnished and supplied, that fact shall be first called to the attention of the Commissioners' Court of Hutchinson County before any expense shall be by the Contractors incurred, and failing to do so he shall receive no compensation therefor.

"That upon same being called to the attention of the Court, said Court shall thereupon have the right to decide whether or not said work shall be performed, or said material supplied or furnished, and the contracting parties shall then and thereupon agree as the price or compensation to be paid said contractor for such work or materials.

"VIII. It is mutually agreed, understood and contracted by and between the parties hereto, that the Commissioners' Court of Hutchinson County shall have the right to, for any reason, after the sum of Eight Hundred Thousand ($800,000.00) Dollars has been expended under this contract, to stop the work and declare the contract terminated. This right here provided for, however, shall in no wise be construed as fixing a maximum which the Commissioners' Court obligates itself to expend under said contract.

"Witness our hands, executed in duplicate this 14th day of March, 1927."

On March 15, 1927, a supplemental contract was made between Hutchinson county, and appellant and a statement of the provisions in same is here taken from the appellant's brief, which recites the execution of the contract of date March 14, 1927, and the fact that the contractor was not required to do any work under said contract in excess of available funds, and that it was contemplated that the funds for the payment of all work would be provided for by bonds to be issued, and that the commissioners' court deemed it to the best interest of the county and the inhabitants thereof that such work should begin without delay, and as Pearson & Co. had expressed a willingness to comply with the request if same could be legally done, and expressed a willingness to accept 6 per cent. warrants in excess of funds available, therefore it was agreed, among other things, that the contractor would begin work on the road as directed by the commissioners' court and would perform such part of said contract as would be directed by the commissioners' court, and that the commissioners' court would have the right to stop the work in the event the bond issue should fail to carry, and for all work done by Pearson & Co. pending the outcome of said election the county would deliver to it Hutchinson county road warrants to the amount of the indebtedness thus incurred, maturing serially over a period of not exceeding one to five years, and bearing interest at 6 per cent., and in case the bond election should carry the contractor would continue to work and receive his monthly estimate in scrip as and when such estimates would become due

under said contract, which was to be paid out of the proceeds of the bond sale, without interest. In case the scrip was not paid by August 15, 1927, it would be redeemed by the issuance of interest-bearing warrants, and for the purpose of raising the funds the commissioners' court, by paragraph 6 of said supplemental contract, obligated and bound itself to regularly and annually levy, assess, and collect a sufficient tax to pay the interest and create the necessary sinking fund to retire at maturity any warrants issued in evidence of the indebtedness created under and by virtue of said contract; and it was further provided that in case, for any reason, the proceeds of the bonds should become unavailable, then Hutchinson county would have the right to suspend work under said contract until such time as the money expected to be realized from the sale of the bonds should be collected; and in case the county should exercise such option it should give notice to Pearson & Co., in which event it should not incur any additional expense after such notice.

It appears from the evidence, and the jury so found, that those submitting bids knew that should their bids be accepted, they would not be required to perform any labor or furnish any material in the construction of any of the highways until and unless Hutchinson county had made provisions with which to pay for same. Also, that at the time defendant submitted its bid on the roads, it knew that it would not be required to begin work on same until funds were available to pay for the work and material.

We think that the contracts on their face were valid and binding contracts, in the absence of allegations and proof of accident, mistake, or fraud, and that the failure to fix a rate and levy a tax sufficient to provide for the payment of the interest and a sinking fund of not less than 2 per cent. with which to meet the payment of the bonds at maturity does not render the contract void. It is held by the Supreme Court in the case of Bassett v. City of El Paso, 88 Tex. 168, 30 S. W. 893, 895: "It would be the duty of the city council annually to levy a tax sufficient to collect the same [i. e., to pay interest and provide a sinking fund], which duty the bond-holder could enforce, but the validity of the bonds could not be affected by the failure or refusal to levy such tax, or by the levy of an insufficient tax during any year."

After discussing the various provisions of the statute requiring the levy and collection of the tax for the payment of the interest and for the creation of a sinking fund for the payment of the principal of the bonds at maturity, the Supreme Court, in the case of Mitchell County v. City National Bank, 91 Tex. 361, 43 S. W. 880, 888, says: "It

therefore follows that it was a legal duty resting upon that court [commissioners' court], after issuing and selling the bonds under the authority given in the first section of each act, to annually levy and collect the tax necessary to raise the interest and sinking fund, not less than the minimum expressed in each law; and the district court had the authority to enforce the performance of that duty by writ of mandamus, but would not control the discretion vested in the commissioners' court to levy and collect a tax which would provide for a sinking fund greater than 2 per cent."

The decision in the Mitchell County Case, supra, was expressly approved by the Supreme Court of the United States in the case of Wade v. Travis County, 174 U. S. 499, 19 S. Ct. 715, 43 L. Ed. 1060.

An election was held in Hutchinson county on the 13th of June, 1927, in which two-thirds of the legal voters of said county voted for the issuance of bonds in the sum of $1,200,000 for the purpose of the construction, maintenance, and operation of macadamized, graveled roads or turnpikes, or in aid thereof; and whether or not an ad valorem tax should be annually levied upon the property of said Hutchinson county, Tex., subject to taxation, sufficient for the purpose of paying the interest on said bonds and providing a sinking fund for the redemption thereof at maturity.

Taxes for the year 1926 were levied by the commissioners' court of Hutchinson county on August 23, 1926, showing the levy of a county ad valorem tax of 15 cents on the $100 valuation for roads and bridges and a like levy for the year 1927 on August 9, 1927.

Whether such taxes were properly levied or not, and whether or not it was an insufficient levy, did not render the contract void and did not render the bonds issued void, for the reason that it lay in the hands of the bondholders to compel a proper and sufficient levy by proceedings in the district court of Hutchinson county.

■ We can see no reason why the bids of the appellant herein should have been rejected because such bid was contingent upon the separate bids on each unit of construction being accepted as a whole. If the sum of these bids, as found by the commissioners' court, was the lowest and best bid for the work to be done and labor performed, its acceptance was within the law. In the case of Gibson v. Davis (Tex. Civ. App.) 236 S. W. 202, 211, where the contractor's bid was contingent upon the award to them of a contract for the construction of the work, it was held that the contingency upon the purchase of the bonds presented no legal obstacle to the sale of the bonds.

■ In the case at bar the commissioners' court of Hutchinson county advertised for

bids, as stated above. The language of the notice was sufficiently comprehensive to include any and all roads in the county, and in the absence of allegations of fraud, accident, or mistake, we hold that it was such as to include the two lateral roads.

It appears that the notice to the contractors was published in 'a newspaper published in Hansford county; a county adjoining Hutchinson county, and a copy thereof duly posted at the courthouse in Stinnett, the county seat of Hutchinson county, and another at Plemons in said Hutchinson county.

Article 28 of the revised Civil Statutes of Texas provides as follows: "Whenever by law notice is required to be given of any act or proceeding, whether public or private, or relating to a judicial, executive or legislative matter, which notice is now authorized by law or by contract to be made by posting notices in one or more public places, such notices shall be given by publication thereof in a newspaper of general circulation which has been continuously and regularly published for a period of not less than one year, in the county in which said act or proceeding is to occur. * * * All notices published hereunder shall be printed at least once each week for the period of time now required for posting such notices. If no paper should be published in the county where such notice is required to be given, then such notice may be posted as now provided by law."

It appears that there was a newspaper published in Hutchinson county at the time of the publication of this notice, but that same had not been published for twelve months at that time.

We can understand the intent of the Legislature in requiring the continuous and regular publication of such newspaper for a period as long as twelve months. This was evidently done to avoid publications of the "fly-by-night" type which could be published for a period of time much less than that to serve a special purpose. Hence, we cannot hold that there was such a newspaper published in Hutchinson county which complied with the requirements of the statute. This being true, the posting of the notices at the courthouse, in the absence of fraud, was a compliance therewith. There is no doubt that the preparation of the commissioners' court to construct for Hutchinson county a system of roads was widely circulated, given wide publicity, and was widely known.

In our views of the case as presented, the only complaint of the plaintiff herein that presents a serious question is the excessive cost of the materials furnished and labor performed. However, the then commissioners' court of Hutchinson county and the appellant having entered into the contract based upon the consideration named therein, we have no authority to question such considerations. Under our view of the case and under the present status of the plaintiff's pleadings, the question of quantum meruit recovery does not enter into the case.

For the reasons given above, we reverse the judgment of the trial court and remand the case to that court for a new trial.

On Motion for Rehearing.

MARTIN, J.

We are in accord with the view expressed in the original opinion that this case should be reversed, but do not reach this conclusion upon the precise reasoning used by Judge RANDOLPH.

The jury, in response to appropriate questions, answered that all bidders knew that they would not be required to perform any labor or furnish any material until and unless appellee Hutchinson county had made provisions with which to pay for same and that they would not be required to begin work until this was done.

It is inferable from the record that it was in contemplation of the parties to raise such funds from the proceeds of a bond issue to be immediately submitted to a vote of the people of Hutchinson county. This was done and the funds thus made available. We have, therefore, read into the transaction a conditional bid with an unconditional acceptance within a reasonable time thereafter by the county. If this conclusion is correct, it may be admitted that at the moment of making the original so-called contract between the parties, it was in violation of the constitutional provision quoted in the original opinion, and this without affecting the final conclusion we reach. In other words, no binding contract resulted until funds were made available in the manner pointed out above. Hence, no debt was created until then. When the bonds were legally issued and sold and their proceeds made available, the act of thereafter making a tax levy was a mere ministerial duty, the enforcement of which could be compelled by appropriate mandamus proceedings. City of Odessa v. Elliott (Tex. Civ. App.) 47 S.W.(2d) 866, 869.

This entire transaction seems to evidence the fact that all bidders made an offer to pave the Hutchinson county roads when and if funds were made available as above stated. The county, having proceeded to vote and sell these bonds for the purpose indicated, by said act met the condition of the bid and thus accepted the offer made, and a "debt" was then and there created within the meaning of article 11, § 7, of the state Constitution.

Suppose the county had failed to provide the funds and appellant had thereafter sued

appellee for a breach of the alleged contract which had remained purely executory and without having performed any of its terms. It seems plain that no cause of action would have existed under such facts, for reasons which we shall presently discuss.

The Supreme Court, in the recent case of Harlingen Independent School District v. C. H. Page & Bro. (Tex. Com. App.) 48 S.W.(2d) 983, 984, had before it a suit for breach of an executory contract with an independent school district, made before bonds were voted and at a time when the values of the district would not sustain the contemplated bond issue. Judgment was given for the portion of the alleged contract that was executed, but denied for that portion which remained executory and unperformed. We think a careful analysis of this case will show that in its final result it supports the·conclusions here announced, though some of the broad language used therein might be construed against it.

It has ofttimes been held that an offer may be withdrawn at any time before acceptance, unless the offer is·based upon a consideration separate and apart from that which by acceptance would ·become the consideration. We construe the bids as a mere offer to pave the roads of Hutchinson county, which offer Hutchinson county in a short time accepted. We would have here an entirely different case if Hutchinson county had refused to go forward with the contract ·before any bond issue was voted and sold and any work done and accepted under the original bid. The principles of law herein mentioned will be found discussed in Williams v. Graves, 7 Tex. Civ. App. 356, 26 S. W. 334; 10 Tex. Jur. 33, § 15, and authorities there collated; and Norwood v. Adams (Tex. Civ. App.) 51 S.W.(2d) 625, 627.

We limit the announcement herein to the particular facts of this case.

■ In view of the possibility of a future trial upon phases of this case other than quantum meruit, we deem it necessary to make the following observations:

The contract between the parties herein contains this clause: "Engineer as referee: It is mutually agreed by both parties to this contract that the engineer shall act as referee in all questions arising under the terms of this contract between the parties hereto and that the decision of the engineer in such cases shall be final and binding upon both alike."

Hess & Co. were selected to supervise the work done by appellant herein, and it is claimed that as to certain matters in dispute, they having approved the estimates, such approval became binding upon appellee. The appellee was not necessarily bound by the decision of the engineers named. It might, under appropriate pleadings and proof, avoid same for fraud, Lasater v. Lopez (Tex. Civ. App.) 202 S. W. 1039; likewise for acts beyond the scope of the powers granted to such engineers by the terms of the contract, Harrell v. City of Lufkin (Tex. Com. App.) 280 S. W. 174.

■ Again, a party seeking to avoid a contract upon the ground that the compensation was so grossly excessive as to amount to legal fraud must assume the burden of proving such fact, and in determining this question the circumstances existing at the time the contract was executed must be looked to. Therefore, in submitting this question, if it is submitted, it must be determined as of the date of the contract. Gulf Bitulithic Co. v. Nueces County (Tex. Com. App.) 11 S.W.(2d) 305, 310. It is further observed that in passing on this matter the contract as a whole must be considered rather than isolated portions of same.

These are all the questions which we deem necessary to mention if the case should be again tried, either upon the theory of fraud based upon an unconscionable price or for a breach of the contract.

The appellee's motion for rehearing is overruled.