HELDENFELS et al. v. SCHOOL TRUSTEES OF SCHOOL DIST. NO. 7, SAN PATRICIO COUNTY.   (No. 5544.)

(Court of Civil Appeals of Texas. San Antonio. Jan. 5, 1916. Rehearing Denied Feb. 2, 1916.)

1. EVIDENCE ⬳441—PAROL EVIDENCE AFFECTING WRITING—BUILDING CONTRACT.

In an action by the contractor to recover the contract price of a school building, where a change from a tile roof to a metal roof was ordered by the architect in writing, stating that there would be no difference in the cost, it was error to admit parol testimony to show an agreement to pay the difference in value between the roofs in variance of the written order, in the absence of participation by the contractor in the alleged fraud of the architect issuing such order.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1719, 1723–1763, 1765–1845, 2030–2047; Dec. Dig. ⬳441.]

2. EVIDENCE ⬳320 — HEARSAY — TESTIMONY OF EXPERT.

In an action to recover for materials used in the erection of a school building by the contractor, it was error to allow a witness as an expert to testify to the value of such materials, where he obtained his information from a traveling man, to whom he submitted the specifications a week before the trial.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 1201; Dec. Dig. ⬳320.]

3. TRIAL ⬳350—SUBMISSION OF SPECIAL ISSUES.

It is improper practice to submit numerous special issues to the jury as to evidentiary facts that merely go to establish or prove some real issue.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 828–833; Dec. Dig. ⬳350.]

**4. TRIAL ⊜229—INSTRUCTIONS—UNDUE EMPHASIS.**

Undue emphasis of the cause of one party by reiteration of charges as to damages is improper.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 513; Dec. Dig. ⊜229.]

**5. SCHOOLS AND SCHOOL DISTRICTS ⊜86—ERECTING BUILDING—BUILDING TAX—ESSENTIAL ALLEGATION.**

Where the petition in a contractor's suit against school trustees for the contract price of a building erected by him failed to allege that a tax had been levied for the purpose of creating a fund out of which the contract price of the building might be paid, the petition failed to state a cause of action.

[Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. §§ 203–205; Dec. Dig. ⊜86.]

**6. PRINCIPAL AND SURETY ⊜100—CONTRACTOR'S BOND—SCHOOL BUILDING—NEW CONTRACT—DISCHARGE.**

Where a bonding company executed a contractor's bond guaranteeing a school building contract with a provision therein that the company should be notified of changes in plans and materials, and subsequently a new contract was entered into between the contractor and the school trustees, involving changes in materials and plans of which the bonding company was not advised, such company was not liable as the contractor's surety under such subsequent contract.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 162–165; Dec. Dig. ⊜100.]

Appeal from District Court, San Patricio County; W. W. Walling, Special Judge.

Action by C. A. Heldenfels against the Trustees of School District No. 7, San Patricio County. Cross-action by defendants against plaintiff, L. W. Franks, and the General Bonding & Casualty Insurance Company. From a judgment that plaintiffs take nothing and for defendants against L. W. Franks, but without recovery against the bonding company, plaintiff and Franks appeal. Reversed in part, and affirmed in part.

J. J. Carmichael and H. S. Bonham, both of Beeville, for appellants. G. R. Scott, Boone & Pope, Claude Lawrence, and Gowan Jones, all of Corpus Christi, and J. G. Cook, of Sinton, for appellees.

CARL, J. C. A. Heldenfels sued the trustees of school district No. 7 in San Patricio county, they being T. D. Cook, J. D. Ezell, and R. L. Anthony, on a certain building contract, entered into on October 12, 1912, between L. W. Franks as contractor and said trustees, wherein the said Franks agreed to erect a school building according to plans and specifications furnished, for the consideration of $11,425. Franks did not complete the contract, but assigned the same to C. A. Heldenfels and he alleges that he did finish the building, and therefore sued for $2,212.-37 alleged to be due on the contract price. The school board answered by demurrer and by traverse of every material issue, and, in a cross-action, sued plaintiff L. W. Franks, the original contractor, and the General Bond-

ing & Casualty Insurance Company, which had made the bond of Franks. In this answer the trustees allege that Franks abandoned the building and declined to complete same under his contract, and, without the school board's consent, pretended to assign the contract to C. A. Heldenfels. They say they notified Heldenfels that they would not accept the assignment of the Franks contract, but that, notwithstanding this notice, Heldenfels went to work upon the building. They also charge that the architects Stephenson & Heldenfels were in collusion with Franks and C. A. Heldenfels for the purpose of constructing said building out of inferior and defective material; that F. W. Heldenfels, the architect, was a partner in a lumber yard at Beeville with plaintiff C. A. Heldenfels; and that Franks owed Heldenfels Bros. a large bill for lumber, and it was to the interest of said Heldenfels Bros. that the building be constructed as cheaply as possible so that there would be a greater profit in the contract, to the end that Franks' debt could be collected. They say they did not at the time know that their architects were so interested, and that, in fact, F. W. Heldenfels, in approving work and material on the building, was really not acting for the board, but was acting contrary to their and in his own interest, and for this reason they are not bound by any of his acceptances, etc. Various and sundry items of damage and violations of the plans and specifications are alleged. The board further alleged that, if the assignment of the contract by Franks to C. A. Heldenfels was good, then he breached same by abandoning the building before it was completed, and that the defective material and construction damaged them to the extent of $2,982. The board had employed Marchant & Roberts, architects, to supervise the corrections and the finishing of the building, and they made the above estimate. It is alleged that the plumbing would cost $1,000, wiring $150; and that the reasonable value of material and labor necessary to construct outside walks and toilet buildings is $645, for which Franks should have credit. Also, that the difference between the cost of the tile roof and metal roof which was put on the building was $520. Or, that the board was entitled to $1,670 by reason of such changes, etc., less $645 due Franks by reason of the toilets and walks—a net balance in their favor of $1,025. It was alleged that the board had paid Franks $9,900, and that they did not know of these defects, etc., at the time he was so paid. The contract provided that for each day over the time stipulated for the completion of the building Franks was to pay $5 and for each day under that time he was to receive a like sum. Therefore the board claimed $4,008 against Franks and the bonding company. Appellants, Heldenfels and Franks, denied these allegations;

---

and pleaded that the school board was estopped to deny that the contract was assigned, that it acquiesced therein and could not be heard to complain, and that the building was completed; and denied any fraud or collusion between the architects and Franks and Heldenfels Bros.; and pleaded that such changes as were made in the building were made on written order of the school board. The bonding company pleaded that the contract it guaranteed was dated September 21, 1912, and the one that is alleged to have been breached was dated October 12, 1912, and that it was not liable for the breach of such subsequent contract and for changes of which it was never advised. The cause was submitted on special issues, and the judgment entered was that the plaintiffs take nothing, and that the school board recover as against L. W. Franks the sum of $446.63; but no recovery was had as against the bonding company and C. A. Heldenfels. Heldenfels and Franks have appealed.

[1] The first assignment of error is directed at the action of the court in admitting testimony as to the difference in cost of the tile roof provided in the contract and the metal roof placed thereon, because the change was ordered in writing in which it was stated that there would be no difference from that provided in the contract. The jury found that the value of the changes was not agreed upon, and the allowance to be made for these changes was $615. And there was a further finding that the architects were guilty of fraud on the school board in supervising the construction and in passing on and accepting material and workmanship in the construction of the building.

F. W. Heldenfels was one of the architects, and C. A. Heldenfels was the man who took over the Franks contract, and in answer to special issue No. 15 the jury found that there was no fraud as between the architects and L. W. Franks. Nor is there any finding that C. A. Heldenfels participated in the fraud of the architects, if they practiced such, on the school board. And, unless he did participate in the same, he would not be chargeable with the fraud. In trying to hold the bonding company, appellees asserted that they had complied with all the conditions of the contract, one of which was that "changes must be agreed upon in writing." This they claim they complied with, and one of the trustees, Mr. Cook, in speaking of these changes, said: "They (the architects) didn't talk as if they wanted to change it. The change was finally made with their approval. It was in writing."

And F. W. Heldenfels testified that the change in the roof was made over his protest. Cook says that Franks thought there would be $500 difference between the tile and the metal roof in favor of the school board, but he says that while Heldenfels, the architect, figured on it, he does not recall what his figures were. Heldenfels says he did not make an estimate of the difference because they said there would be no change in cost. These changes were made upon written orders of the school board, and it was therein stated that there would be no change in the cost, except that in some an additional amount was fixed. Unless C. A. Heldenfels and Franks participated in the alleged fraud of the architect in the issuance of said orders, they had a right to rely on same, and it would certainly be varying the terms of a written instrument to permit Miner to testify to a different agreement from that expressed in the writing. Cook says: "Franks figured to Mr. Miller and me that there would be something like $500 difference in costs." And the architect swears it was made over his protest. No trustee says that the architects submitted an estimate of the difference in cost. One trustee, however, does say that they had an understanding that when a change was made the proper party should receive credit for the fair and reasonable difference between the work as actually planned and that performed. This, however, was put down in writing and is not to be supplemented by testimony to show a different contract at the time. The assignment is sustained, and for the same reason the second assignment is also sustained.

[2] We think, also, that the objection should have been sustained to the testimony of the witness Holman, as an expert, because he admitted that he got his price from a traveling man. He says the drummer knew the articles to give him prices on from the specifications, and says that these prices were given him only the week before the trial. He did not ask the gentleman of the road what those prices were a year before or at the time the work was done. Such testimony should have been stricken out when it developed that the witness was merely telling what a man had told him and that not at the time of the alleged breach of the contract.

Upon another trial of this case, if it should be determined that the architects and the contractors were in collusion for the purpose of defrauding the school board and by reason thereof induced the signing of orders which may thereby be avoided on account of such fraud, then, in the event of such finding, it would be proper to submit to the jury to find to what extent the board had been injured by reason thereof; but, unless that fraudulent collusion be established, the contracts or written orders would speak for themselves.

[3] There were 40 special issues submitted to the jury, and they so overlap and conflict that it is a very difficult matter to ascertain just what the jury meant. For instance, the jury finds that deviations were made from the plans and specifications; that these changes were in some instances on written order of the board, and approved

by the architects; that the change in cost was not always stated; that the damage on December 1, 1913, on account of defects resulting from a variance from the original plans, was $1,975; that the trustees are entitled to liquidated damages at $5 per day under the contract for 100 days; that the total cost of correcting the defects pointed out by the trustees would have been $1,175; and then the difference between the value of the building as it was at the time of the trial and when Heldenfels claimed to have completed it is $995. And, further, that a fair and reasonable allowance for emitting the plumbing and fixtures is $400, that a fair and reasonable cost of completing the toilets is $600, and that the difference in cost of the tile roof and metal roof is $500.

[4] We have heretofore, on different occasions, condemned the practice of submitting a multitude of issues to the jury, especially on those evidentiary matters that merely go to establish or disprove some real issue. Railway Co. v. Jenkins, 172 S. W. 984; Aguinaga v. Medina Valley Irrigation Company, 168 S. W. 79. Neither should the court, by reiteration of charges as to damages, unduly emphasize the cause of one party. We therefore sustain the sixth assignment.

We cannot write this opinion properly and follow strictly the order of the briefs. What we shall do is to state our views and then the parties may apply them as may be required upon another trial.

The important thing to determine, first, is whether there was collusion between the architects and Franks or C. A. Heldenfels as against the trustees to such an extent as to vitiate such written modifications and changes in the original contract so as to make them not binding on the board. And when this is determined then it becomes material as to the amount of damages resulting therefrom. It would be material, of course, to inquire what the damage was by reason of defective material and workmanship actually placed in the building up to the time the contractors turned it over or quit the building, and what it would cost to complete the same according to plans and specifications. And if the written orders for changes should be found not binding because of fraud as before indicated, then it would be material to inquire as to the agreement with reference to the cost of such changes; but, unless they first be found as obtained by fraud, the contractor participating, they speak for themselves.

If there were deviations from the original plans and specifications, it would be material to inquire whether same were authorized by the board, and, if they were not, then as to the difference in cost, etc.; but this would not apply to that part finished, because that would be covered in the general finding as to the difference between the value of the build-

ing if the work and material had been as specified and that actually placed therein. And as to whether the board unreasonably delayed making complaint if the testimony is such as to make it an issue as to whether the terms in the contract in regard thereto did not apply. Another inquiry might be as to whether the extensions granted by the architects (if they should be in the record) were done in fraud of the rights of the board, for, if they were not, they would be binding on the board under the contract. The contractor claims that he finished the building in December. At any rate, he quit it then, and it occurs to us that the board's damage then was the difference between what they contracted to get and what they actually received.

[5] Appellee school trustees have a cross-assignment of error to the effect that the court erred in overruling a general demurrer to plaintiff's petition because same failed to allege that a tax had been levied for the purpose of creating a fund out of which the contract price of the building might be paid. It has often been held that a petition which fails to make such allegation does not state a cause of action. School Dist. v. National Bank, 163 S. W. 340; McNeal v. City of Waco, 89 Tex. 89, 33 S. W. 322; Peck-Smead Co. v. City of Sherman, 26 Tex. Civ. App. 208, 63 S. W. 340; Noel v. City of San Antonio, 11 Tex. Civ. App. 580, 33 S. W. 263.

[6] The contract which the bonding company guaranteed was dated September 21, 1912, and the contract upon which recovery was had was dated October 12, 1912. The bonding company knew nothing about the various changes made, and it was provided that it should be advised of such changes. When that company guaranteed the contract or became surety, it did so in reference to the one dated September 21, 1912, as found by the jury, and did not undertake to make good a contract subsequently entered into by the board without its knowledge or consent; nor can it be held liable for changes of which it was not advised.

As between the school board and appellants, the judgment is reversed and the cause remanded; but, as to the bonding company, the judgment is affirmed.

⬤⟳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes