## WEST AUDIT CO. v. YOAKUM COUNTY.
### No. 1045–5242.

Commission of Appeals of Texas, Section A.
Feb. 4, 1931.

Lockhart & Garrard and F. D. Brown, all of Lubbock, for plaintiff in error.

Bean & Klett, of Lubbock, for defendant in error.

SHARP, J.

West Audit Company, a corporation, brought this suit in the district court of Yoakum county, alleging that Yoakum county, acting through its commissioners' court, employed the West Audit Company to make an audit of its records and financial affairs, the work to begin about November 1, 1926, and to be completed as rapidly as consistent with thorough and accurate auditing; that the term to be covered was from 1907 to 1926, inclusive, and then annually thereafter for the years 1927 and 1928. That as compensation the county agreed to pay to the West Audit Company at the rate of $25 per day for each senior accountant employed, and $15 per day for each junior accountant employed, not to exceed two senior and two junior ac-

countants, and in addition thereto to pay the expenses of said accountants while actually employed in the work. That the contract is in writing and is dated November 8, 1926.

That plaintiff, in pursuance of said agreement, performed the services of auditing the books, etc., and from time to time communicated to the offices of the county the information derived from said audit, and by reason thereof the county was benefited as a direct result of the labors performed by the West Audit Company. That just as the audit was nearing completion the courthouse without any fault or negligence on the part of the West Audit Company, was destroyed by fire and the books of the county, as well as the work sheets and data used by plaintiff, were also destroyed.

Plaintiff prayed for judgment establishing said debt on said contract, and in the alternative that it have judgment for the reasonable amount of its services for performing said labor and for general and equitable relief.

The defendant challenged the allegations made by plaintiff and in answer thereto, among other things, alleged that the contract made by and between plaintiff and defendant was in violation of the Constitution and statutes of Texas, and therefore was void and unenforceable. The case was tried before the court without a jury, and judgment was rendered that plaintiff recover nothing against the defendant. An appeal was made to the Court of Civil Appeals for the Seventh Judicial District, and the judgment of the trial court was affirmed. The Supreme Court granted a writ of error.

We will describe the parties to this suit as plaintiff and defendant as was done in the trial court.

Counsel for West Audit Company contend that the Honorable Court of Civil Appeals erred in holding that at the time of the making of the contract sued on no tax was levied to pay the interest and create a sinking fund to discharge the indebtedness contemplated by the contract, and that the contract was in violation of article 11, § 7, of the Constitution, and therefore void.

The trial judge made the following findings of fact and conclusions of law:

"I find that plaintiff and the Commissioners Court of Yoakum County entered into a contract or agreement which was entered on the minutes of said court on the 8th day of November, 1926, in substance as follows:

"That Yoakum County, acting through its commissioners court employed the West Audit Company to make an audit of its records and financial affairs of Yoakum County, and furnish to Yoakum County a complete and detailed statement of the result thereof, the work to begin about November 1st., and to be

completed as rapidly as consistent with thorough and accurate auditing; that the term to be covered was from 1907 to 1926 inclusive, and then annually thereafter for the years 1927 and 1928. And that as compensation, the County agreed to pay plaintiff at the rate of $25.00 per day for each senior accountant employed, and $15.00 per day for each junior accountant employed, not to exceed two senior and two junior accountants, and in addition thereto to pay the expenses of each of said accountants while actually employed in said work.

"I further find that plaintiff caused two senior and two junior accountants to work at said job 21½ days, being the days of November 22nd, 23, 24, 25, 26, 27, 28, and 30, and December 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15 and half of December 16, and that they were employed only for said length of time; and that the actual expenses while engaged in the work amounted to $165.00; and that the total amount of labor and expenses is $1885.00.

"I further find that when the contract was made, and when the plaintiff was employed to do the work, there was not on hand money to pay therefor, nor was there prospect of collecting it out of the taxes legitimately levied for the general fund purposes, such as to justify a reasonable expectation that there would be on hand to meet the payment of the contract, or for the work undertaken and permitted to be done, and that no provision was made for levying a tax to provide for the interest and sinking fund to pay said indebtedness, as required by Section 7 of Article 11 of the Constitution.

"I further find that while the work was in progress, that the courthouse of Yoakum County was burned, and that such fire destroyed several of the books, records and check stubs, warrant stubs, reports, etc., and also all the written data that plaintiff's employees had prepared to the date of said fire, and that it was not possible for plaintiffs to complete the audit after the destruction of said records, books, data and etc., and make a detailed statement of the result of the audit.

"I further find that the destruction of said books and records was not the result of the negligence of the plaintiffs.

"Conclusions of Law.

". "Based upon the foregoing findings of fact, I conclude as a matter of law that the contract of employment was entire in its nature, and that neither party was responsible for the destruction of said records, books, data, etc., and that when the subject matter of said contract was thus destroyed, it discharged the contract, and both parties thereto.

"I further conclude, as a matter of law, that since the destruction of the books and records was not the fault or negligence of

plaintiffs, that it is not liable to the defendant on defendant's cross action for the value thereof."

R. P. Moreland, county judge of Yoakum county, at the time the contract was made and during the time the labor was performed by the West Audit Company, testified substantially as follows:

"As to whether or not, in talking to these gentlemen about the matter, there was any estimate made to me by Mr. West as to the probable expense of that audit, not to begin with. After they got into it I saw it was costing the county a heap more than we had anticipated, and I talked to them about it and they said it was bigger job than we thought, twenty years to audit, and I didn't want to be too impulsive about it. I don't remember his ever giving me an estimate of what it was going to cost. I don't remember if he ever did at any time; he had several conversations. He just told me what it would cost per man per day, didn't make any estimate of the number of days. * * *

"As to whether or not it is a fact that these commissioners expected to pay these boys for this work out of the current revenues of the county; I don't know that I could say; we expected to pay them, expected to give it to them. As to whether there were funds available for that purpose, the fact of the pay never occurred to us. We expected to issue a warrant as we would in any other current transaction, payable out of the funds available at that time if there were any. We expected to give them a warrant just like a warrant for officers' services and they could go to the treasurer and get it if they could. We did know there were considerable taxes to be collected in January, which is the regular time to collect them, and also knew about how much that would be. I do not know how much was collected and passed to the credit of the General Fund for the past year. They usually collected from twenty two to twenty five hundred dollars, that all went to the General Fund of the county. Our valuation is $1,648,158.00, on which the Jury Fund gets 15 cents, the Road and Bridge Fund 15 cents and the General Fund 25 cents. I guess the General Fund would be $3500.00 to $4000.00. I may be talking too fast; it would be about four thousand dollars. If it had all been collected there would have been collected and credited to the General Fund something over four thousand dollars. And in fact we had several thousand dollars due as delinquent taxes which had not been collected; I don't think it would have run over three thousand or thirty five hundred dollars at the outside, delinquent taxes due the county.

"As to whether we didn't expect to issue any time warrants or make any provision for future payment of this debt that the county would owe these auditors and as to whether as far as they were concerned it was to be

a cash transaction; it was a warrant transaction, we didn't expect it to cost as much as it did. As to whether we didn't know or couldn't have determined with any degree of certainty as to what the cost would be; the commissioners understood that they were to pay twenty five dollars a day for the seniors and fifteen for the juniors and pay their expenses while here; we didn't know how long it would take. Now there was right smart demand among the officers and tax payers for an audit. In fact they presented the commissioners court with a petition as long as your arm signed by practically a majority of the tax payers of the county insisting that they wanted these books audited. That was one of the causes of our employing the auditors, then there were a lot of us going out—they were going to change officers and we thought it was no more than right that they should all know where we was."

It appears from the record that it would have been impossible, at the time of the making of the contract, for the commissioners' court to provide for the levying and collecting a sufficient tax to pay the interest thereon and provide a sinking fund, for the reason that they did not know, and had no way of estimating, the amount of the debt, or how much tax to levy. or how much sinking fund to provide for.

To pay. for the audit it was intended to issue a warrant as could be done in any other current transaction, payable out of the funds available at that time; and the evidence tends to indicate that the parties acted in good faith with reasonable ground to believe that the current revenues would be sufficient for that purpose.

■ In our judgment the contract made by Yoakum county with the West Audit Company does not violate article 11, § 7, of the Constitution of Texas. The West Audit Company contracted with Yoakum county to audit the books of that county for a certain sum per day, and neither party could make any estimate of the number of days it would require to complete the contract and could not, therefore, arrive at the amount necessary to pay for the work to be done. In this view we think we are sustained by the following authorities: City of Tyler v. Jester & Co., 97 Tex. 344, 78 S. W. 1058, 1062; City of Houston v. Glover, 40 Tex. Civ. App. 177, 89 S. W. 425, 427 (W. E. Ref.); Tackett v. Middleton (Tex. Com. App.) 280 S. W. 563, 44 A. L. R. 1143; Austin Brothers v. Patton (Tex. Com. App.) 288 S. W. 182.

In the case of City of Tyler v. Jester & Co., supra, which case, in our opinion, involved an analogous question, Judge Brown in rendering the opinion of the Supreme Court says:

"It appears that the parties to the contract intended that the sum should be paid out of the current revenue for the year, and there is nothing to indicate that they did not act in good faith, with reasonable ground to believe that the current revenue would be sufficient for that purpose."

In the opinion of City of Houston v. Glover, supra, Judge Pleasants says:

"The employment of appellee by the city to prepare plans and specifications for the buildings which it proposed to construct was not the creation of a debt, in the purview of sections 5 and 7 of article 11 of the Constitution, which prohibits the creation of a debt by a municipal corporation unless at the time of its creation a tax be levied to provide a fund to pay the interest and create a sinking fund for the payment of the debt at maturity."

Counsel for Yoakum county contend that the contract of employment made with West Audit Company was for services of an auditor such as is provided for in article 1641, R. S. 1925; and since the requirements of that article were not complied with, in that there was no resolution of the commissioners' court of Yoakum county reciting the reasons and necessity thereof, and no resolution was presented in writing at a regular or called session of the court and permitted to lie over until the next regular term, and no notice of said resolution was published or posted as required, that the letting of the contract was not made in accordance with the provisions of article 1641.

■ It is undisputed that the provisions of article 1641 were not complied with in making the contract in controversy. In our opinion West Audit Company cannot recover upon the written contract made with Yoakum county to audit its books. Plaintiff in its petition asked in the alternative that it have judgment for the reasonable amount for its services rendered. It appears from the record that there was a strong demand among the officers of the county for an audit; that some of the officers were going out of office and others were succeeding them, and all desired to know the exact condition of affairs. In fact, a petition, signed by practically a majority of the taxpayers of the county, insisting that the books be audited, was presented to the commissioners' court, and that was one of the causes for the court employing the auditors.

No issue of fraud on the part of West Audit Company getting the contract with the county has been raised, nor is it questioned that the work on the audit was accurately and efficiently performed. It. is further shown by the evidence that in pursuance of the agreement with West Audit Company, several men went to work upon the audit, and that they worked many days. That during the time they were at work they had several conversations with the members of the commissioners' court of that county and no one-

protested or objected to the audit being made. That from time to time the officers discussed with the men at work on the audit the condition of the books as they found them. That the condition of the affairs of the various officers, as reflected from the books, was communicated to the members of the commissioners' court, and they received the benefit of their labor in that respect for Yoakum county. The evidence tends to show that this was of benefit to the county and was received by the officers representing the county.

 It is the well-settled rule in this state that when a county has received the benefit of a contract which it had power to make, but which was not legally entered into, it may be compelled to do justice and to pay the consideration or at least to pay for what it has received. In such cases the law will imply a contract. City of San Antonio v. French, 80 Tex. 575, 16 S. W. 440, 26 Am. St. Rep. 763; Boydston v. Rockwall County, 86 Tex. 234, 24 S. W. 272; Gallup v. Liberty County, 57 Tex. Civ. App. 175, 122 S. W. 291 (W. E. Ref.); Sluder v. City of San Antonio (Tex. Com. App.) 2 S.W.(2d) 841, 844; Payne et al. v. Bank (Tex. Com. App.) 291 S. W. 209, 210.

Judge Leddy, in the case of. Sluder v. City of San Antonio, supra, after reviewing many decisions of the various courts in an exhaustive opinion, tersely states the rule as follows:

"The rule thus firmly established by the courts of this state rests upon the obligation of a municipality to do justice when it has received money, property, or services of another. Under such circumstances, the plainest principles of justice require that it should not be permitted to receive and retain the benefits of a contract without paying the reasonable value thereof. This principle is, we think, supported by the great weight of authority.

"In the case of State of Minnesota et al. v. Bert Clark, 116 Minn. 500, 134 N. W. 129, 39 L. R. A. (N. S.) 43, it appeared that the statutes of Minnesota provided that 'no contract with a municipal corporation, for the doing of any public work, shall be valid for any purpose, unless the contractor shall give a bond to the municipal corporation,' for the purpose of securing persons who furnish labor and material, etc. The Supreme Court of Minnesota held that a contract in which no bond was given as required by statute was wholly void, and no recovery would be permitted thereon. The rule of implied contract, however, was sustained, and the plaintiff was permitted to recover the reasonable value of the labor and material furnished by him in performance of such contract."

In Page on Contracts, vol. 5, § 2719, p. 4795, the following rule is laid down:

"The amount which can be recovered by one who has performed in part under a contract which is discharged by impossibility, is generally limited to the value of the property which actually passed to the adversary party by reason of such performance, or to the value of the services of which the adversary party actually had the benefit."

The foregoing rule seems to us to be sustained by sound principles of justice.

In the case of Weis v. Devlin, 67 Tex. 507, 3 S. W. 726, 729, 60 Am. Rep. 38, Judge Stayton, in discussing the doctrine of entirety of contract, and the opinions of the various courts in holding that a recovery could not be had when the agreement was to perform labor to complete an entire job, says:

"The cases which hold that a recovery cannot be had in such cases are made to rest largely on the entirety of the contract, and the holding in the particular jurisdiction that apportionment cannot be made.

"The tendency of recent decisions has been to ameliorate that rule, and in this state it has long ceased to be recognized.

"As we said in Carroll v. Welch, 26 Tex. 149, which arose on a contract to do the entire wood-work on a building: 'According to the modern decisions of this court, the rule appears to be that, if the employee abandons his contract, the employer shall be charged with only the reasonable worth or the amount of benefit he has received on the whole transaction, and, in estimating the amount, the contract price cannot be exceeded. The former is allowed to recover for his part performance its reasonable worth, not to exceed the contract price, and the latter to recoup or reconvene his damages for the breach of contract by the former. When the employee is discharged without cause, or is prevented by the employer from completing the performance, he is entitled to recover for the part performed, and the damages he has sustained by breach of contract by the employer. If both parties have broken the contract, or there has been a mutual abandonment of it by both parties, the employee is entitled to recover the reasonable worth of the services he has rendered the employer.'

"If such be the rule even in case of violation of contract, the employee certainly cannot be denied a recovery when by inevitable accident he has been prevented from performing the contract. By the case of Gonzales College v. McHugh, 21 Tex. 257, which was a case of builder's contract, the rule in force in this state is further illustrated. Hillyard v. Crabtree, 11 Tex. 264 [62 Am. Dec. 475], was a case arising on a builder's contract, entire in its nature, which the employee was prevented from completing by his sickness, and the same rule was enforced. 'If a contract which is entire, after part performance,

is rescinded by the mutual consent and act of the parties as to the residue, or the further performance is prevented by law or the' act of God, without fault of either party, the contractor may recover on a quantum meruit for what he has done. In such case, neither party is in fault, and therefore is not responsible to the other for failing to fulfill the entire contract. In a recovery on a quantum meruit there is an apportionment of so much of the agreed compensation to the contractor as he has earned in what he has done; he recovers such part of the entire compensation as is equal to the part he has performed of the entire contract.' 2 Suth. Dam. 507. This was the rule of the civil law. Dom. Civil Law, 553."

The able and learned trial judge and the eminent associate justice who wrote the opinion for the Court of Civil Appeals made no findings upon the issue of implied contract, as raised by the evidence and the pleadings in this case, or what was the reasonable value of the services rendered by the West Audit Company to Yoakum county, or whether or not the county was benefited by the work so rendered, and this phase of the case does not appear to have been passed upon in reaching the conclusions stated by the two courts. In view of this fact, we think justice would be best subserved in holding that this case should be reversed and the cause remanded for another trial.

We recommend that the judgments of the Court of Civil Appeals and the trial court be reversed, and this cause be remanded to the trial court for another trial.

CURETON, C. J.

Judgments of the district court and Court of Civil Appeals are both reversed, and the cause remanded, as recommended by the Commission of Appeals.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.