## CITY OF BIG SPRING, TEXAS, V. JOE E. WARD.

No. 7998. Decided March 3, 1943.
Rehearing overruled March 31, 1943.
(169 S. W., 2d Series, 151.)

*Coffee & Coffee,* of Big Spring, for petitioner.

It was error for the Court of Civil Appeals to hold that the city had power to enter into the contract with plaintiff, and that the contract was not void as a matter of public policy. Specht v. Collins, 81 Texas 213, 16 S. W. 934; Nairn v. Bean, 121 Texas 355, 48 S. W. (2d) 584; Grayson County v. Harrell, 202 S. W. 160.

*Bullington, Humphrey & Humphrey,* of Wichita Falls, for respondent.

MR. JUDGE BREWSTER delivered the opinion of the Commission of Appeals, Section A.

On June 26, 1935, the petitioner, City of Big Spring, and the respondent, Joe E. Ward, entered into the following contract in writing:

· "This contract entered into this the 26th day of June, 1935, by and between the City of Big Spring, Texas, hereinafter known as Party of the First Part, and Joe E. Ward, successor to MONTGOMERY & WARD, CONSULTING ENGINEERS of Wichita Falls, Texas, hereinafter known as Party of the Second Part, for the purposes and conditions mentioned below:

"The Party of the First Part desires to employ engineering services to make an investigation and a report of a water supply covering both an investigation of the present supply and the advisability of additional wells or a storage reservoir, or both the additional wells and a storage reservoir; for preparing the engineering information necessary to supply to the Federal Emergency Administration of Public Works for a loan and grant to construct the desired improvements; so (sic) assembling and reviewing the application (after the legal and financial data have been prepared by the city) before filing with the Federal Emergency Administration of Public Works; and for preparing the plans and specifications and supervising the construction of the improvements, hereinafter referred to as a report, application and proposed improvements.

## "SECTION I

"Party of the Second Part agrees to and shall furnish all engineers and engineering assistance necessary to make a complete investigation and report of a water supply for party of the First Part.

"Party of Second Part agrees to and shall prepare the enginerring information necessary to apply to the Federal Emergency Administration of Public Works for a self-liquidating loan to construct the proposed improvements, and shall review and assemble the completed application (after the legal and financial data have been prepared by the city) before filing with the Federal Emergency Administration of Public Works, and further agrees to assist Party of First Part in every way it can in getting the application approved and the loan granted.

"SECTION II.

"Party of Second Part agrees to and shall furnish all surveying and drafting equipment, all stakes, rodmen, engineers and all labor and equipment needed to prepare all necessary plans and specifications for the construction of the proposed improvements and shall prepare and furnish such necessary plans and specifications, and Party of Second Part shall also supervise the construction of the proposed improvements and shall furnish at all times adequate inspection and supervision.

"SECTION III

"Party of First Part agrees to and shall pay Party of Second Part for services mentioned in Section I above, the lump sum of $2,000.00.

"The Party of the Second Part, or one of his representatives, shall personally present and review the report with the Party of First Part, at which time Party of First Part shall pay to Party of Second Part the amount due for preparing the report.

"SECTION IV

"Party of First Part agrees to and shall pay to Party of Second Part for engineering services covering the preparation of the plans and specifications and the supervision of construction of the proposed improvements, as hereinabove referred to, the amount of the two and one-half per cent (2½%) of the cost of the work authorized by Party of First Part for making the surveys and preparing the plans and specifications for the work authorized by Party of First Part, and the amount of two and one-half (2½%) of the total cost of the work actually constructed for engineering supervision and inspection.

"Upon obtaining money from the Federal Emergency Administration of Public Works for constructing the proposed improvements, the Party of First Part shall pay to Party of Second Part two and one-half per cent (2½%) of the estimated cost of the work for which surveys, plans, and specifications were authorized by Party of First Part; and after the work has begun Party of First Part shall pay to Party of Second Part each month two and one-half per cent (2½%) of the cost of the work done during the month, and the total amount of

monthly estimate of the contractor shall be the basis for calculating the amount due Party of Second Part.

## "SECTION V

"It is understood and agreed by and between the parties hereto that the amount and extent of improvements applied for or made through Federal Emergency Administration of Public Works is left entirely with the discretion of First Party. In event the amount of improvements constructed shall amount to as much as $400,000.00 actual cost, Second Party covenants and agrees that he will reimburse to First Party $1,000.00 of the amount provided in Section III hereof, to be paid to Second Party by First Party; in event the actual costs of construction on improvements amounts to less than $400,000.00, in such event Second Party agrees to reimburse to the City of Big Springs such proportion of $1,000.00 as the actual cost of construction actually made bears to the sum of $400,000.00. It is agreed that the amount so reimbursed by Second Party to First Party shall be taken out of and deducted from the last estimation due to Second Party as provided for in Section IV of this contract. In event there is no actual construction under the terms of this contract, then Second Party shall be under no obligation to pay back to First Party any part of said $2,000.00 provided for in Section III hereof.

## "VI

"It is further understood and agreed by both parties of this contract that it shall be in full force and effect from date of execution until the completion of the contemplated improvements, mentioned herein, and the final payment for engineering services, described herein, is made to Party of Second Part."

Thereafter Ward sued the city in the district court of Howard County for $20,876.88 damages for its alleged breach of that contract. The trial court sustained a general demurrer to Ward's first amended original petition and dismissed the suit, after his refusal to amend. That judgment was reversed and the cause remanded by the Court of Civil Appeals. 161 S. W. (2d) 821. A comprehensive statement of the material allegations of the petition appears there. (See pages 822 to 824, inc.) We see no reason to repeat them, except as may be necessary to explain our conclusions.

The city's first point of error presents the proposition that when the subject matter of a contract is such that a municipal corporation has no present authority to act, it cannot give the contract validity by a provision that the same shall become effective in the event it becomes vested with such authority in the future.

In its relation to the proposition urged, the effect of Ward's contract and of the allegations of his petition with respect thereto is that *if* the city thereafter decided to go on with the proposed improvements, *if* it got a grant of money from the federal government, *if* it got a loan of additional money from the same source, *if* it voted and, issued bonds to liquidate that loan,—*then* he was to do the work and his commissions were to become due. As to when these several conditions were to be met, the contract is wholly silent. They might be met in one year, in ten years, or at any time in the future, or never, so far as any language of the contract is concerned. According to the allegations of the petition, it actually was three years before the conditions were satisfied. That during that time his contract amounted to nothing because of the city's lack of means with which to perform, seems to be recognized by Ward in his petition. He says, "While the City was not obligated under said contract to accept said plan or to make said improvement, nevertheless it was a conditional contract, which required the City, in the event it did accept the plan, to secure the loan and grant and make the improvement, to employ the plaintiff and none other as an engineer to make the plans and specifications therefor and to supervise the construction, and required the City to pay the plaintiff the compensation therefor provided in the contract." Moreover, the petition alleges that "in the event the grant was obtained" the city would issue its bonds "to further finance such grant to the extent of $500,-000.00," yet there is no claim that it was legally bound to do so.

■ We think these features of the contract make clear the soundness of the city's proposition. Certainly it was never intended that a municipality should be indefinitely bound by an agreement hazarded on the possibility that it may some day become invested with the authority to peform it. Whenever such procedure is attempted, it will necessarily result in many contingencies and much indefiniteness, such as attended the effort in this case. It was early announced in Ellis v. City of Cleburne (Civ. App.), 35 S. W., 495; er. ref.), that there must be authority of law for the contract of a municipal corporation,

and, *to give it validity, such authority must exist when the contract is made,* and if it does not then exist the contract cannot thereafter be ratified. In that case the City of Cleburne made a contract on September 13, 1883, agreeing to issue certain bonds when a described water works system was completed and accepted. At that time a city of Cleburne's population could not incur an indebtedness to erect waterworks, but a constitutional amendment permitting it to do so had been ratified by vote of the people on August 14, 1883, and the contract was evidently made in anticipation of the amendment becoming effective by gubernatorial proclamation on September 25, 1883. If there the city could not make a valid contract in anticipation of authority certainly to come in twelve days, how can it reasonably be said here that the city could make a valid contract in advance of power to perform, which, under the terms of the alleged agreement, might never come, and which in fact did not come until three years later?

In Harlingen Independent School District v. C. H. Page & Bro. (Com. App.), 48 S. W. (2d) 983, it was held that a contract between the school board and a firm of architects wherein it was agreed to pay the latter a percentage of the proceeds of a contemplated bond issue to erect several school buildings was void. It is pointed out that, under the statutes then in force, the power of the district's trustees to contract with respect to its available funds was limited to certain designated purposes, and that the payment of architects' fees for services to be rendered in connection with a future building program was not one of them. There the liability of the district was expressly conditioned on the bonds being voted and sold and the money actually becoming available. Here the liability of the city, Ward alleges, was expressly conditioned on the federal grant and loan and bonds being voted and issued to liquidate the loan. We see no difference in the principle to be applied, yet in that case it was said that "the board was without power to bind the proceeds of the bond fund to be derived from bonds not even voted at the time the contract was made. * * All of the statutes which confer power to expend bond funds limit the power to funds that are available, and from all of the statutes and constitutional provisions above mentioned, we are compelled to the conclusion that it was not the intention of the Legislature to permit the board to contract with reference to such funds unless and until they are actually available." In the case at bar the city had no power to make the contract

when it attempted to do so, because it then had no money on hand with which to construct the contemplated improvements and none available for that purpose. That it had no such funds on hand or available is clearly disclosed by the language of the contract, which was attached to the petition as an exhibit and thereby became a part of it, to be considered in weighing the sufficiency of the petition as against the general demurrer.

We recognize that the city had authority, under Art. 1015, sec. 30, R. S., 1925, to construct a waterworks system and to contract with regard thereto. But that does not mean that it could give Ward the exclusive right to serve it as an engineer in the event it should first become financially able and should then decide to build such a system at some wholly indefinite and undetermined time in the future. It has been said that such a contract is void, not because it is against public policy but rather because it is beyond the power of the municipality to make. Potter County v. Slaughter Cattle Co. (Com. App.), 254 S. W. 775.

The case at bar is clearly distinguishable from cases like Tackett v. Middleton (Com. App.), 280 S. W. 563, because there the city had in the treasury $27,000.00 worth of the bonds in question at the time the contract was made and it was contemplated by the parties that the architect was to be paid his commission therefrom.

Nor are we dealing with a fully executed contract such as was under consideration in W. L. Pearson & Co. v. Hutchinson County (Civ. App.), 52 S. W. 509 (er. ref.). In that case the work had been done, accepted and paid for, and the county sued to recover a part of the money it had paid under the contract. It is pointed out that the transaction amounted to a conditional bid by the contractors, an unconditional acceptance by the county within a reasonable time and a complete performance by both parties. Here the undertaking of Ward and the city, as set forth in Sections I and III, of the contract, had been fully performed by both, and there is no dispute about it. But that portion of the contract in suit was clearly executory when the city breached it. Ward alleges that while he was carrying out his part of the contract and before his services in respect to the plans and specifications had been finally concluded, but after they had been "substantially" performed, he was advised by the city that it had terminated his services and em-

ployed other engineers. He makes no claim that he supervised any of the construction work. See 10 Tex. Jur., p. 25, sec. 11; 17 C. J. S. p. 325, sec. 7.

■ When he dealt with the city, Ward was bound to know the extent of its powers. When he proceeded under the contract, he did so charged with knowledge that the city might not elect to perform it. He knew that want of power to make the contract authorized the city to disregard it. City of Brenhan v. Brenhan Water Company, 67 Texas 542, 4 S. W. 143; City of Teague v. Sheffield (Civ. App.), 26 S. W. (2d) 417; 38 Am. Jur., p. 182, sec. 506. Therefore, he cannot now explain.

We have concluded that the trial court was correct in sustaining the general demurrer. Accordingly, the judgment of the Court of Civil Appeals is reversed, and that of the trial court is affirmed.

Opinion adopted by the Supreme Court March 3, 1943.

Rehearing overruled March 31, 1943.