## FLATONIA INDEPENDENT SCHOOL DIST. v. BROESCHE.

### No. 9407.

Court of Civil Appeals of Texas. Austin.
Nov. 24, 1943.

Rehearing Denied Dec. 15, 1943.

E. A. Arnim, Jr., of La Grange, and Hollis Massey, of Columbus, for appellant.

Johnson & Rogers, of San Antonio, for appellee.

224

BLAIR, Justice.

Appellee, Travis Broesche, sued appellant, Flatonia Independent School District, for $4,231, the alleged reasonable value of his architectural services rendered the school district in connection with a proposed building program, the recovery being sought upon an implied contract to pay for the services, or upon a quantum meruit basis. The trial to the court without a jury resulted in judgment for appellee for $2,-785.82, from which the School District has appealed. Appellee has also appealed because of the failure of the court to render judgment for the entire $4,231 as sued for.

The School District contemplated a building program to build a new building for negro pupils, a gymnasium for white pupils, a lighted football field, and the installation of a central steam heating system for existing buildings. To partly pay for the project the School District intended to secure aid from the Federal Works Agency Work Project Administration. The remainder of expenses were to be partly paid by bonds voted by the School District. The Board of Trustees secured the services of appellee, an architect, to make the plans and specifications, and the estimated costs of the entire project, all of which were accepted by the Board, and were attached to the application for the WPA aid, which appellee also prepared for the Board. Appellee also furnished the Board with information for the voters relating to the project, which was used in connection with the bond election held on September 11, 1941, at which time the voters authorized the issuance of $30,000 of bonds to pay part of the school's portion of the costs of the building program. On September 19, 1941, the School Board entered into a written contract with appellee to pay him 3.6 per cent. of the total costs of the building program as his fees for architectural services. The WPA approved the project on April 14, 1942, agreeing to pay $82,497 of the costs, and the School District agreeing to pay $42,190 of the costs, making a total of $124,587 to be paid for the improvements. The School District's portion of the costs was to be paid by approved "sponsor's contribution of $13,148," and by the sale of the $30,000 of bonds voted by the School District. Before any work began the WPA notified the School District that due to the present war certain critical materials provided for in the project could not be used, and in con-

sequence the project had to be abandoned by the School District. The bonds voted were not sold, though issued and approved as required by law. Appellee demanded pay for his services, which the School District refused. Appellee proved by himself and other architects that 3.6 per cent of the total costs of the project was the usual and reasonable value of the services rendered by him.

■ Appellee concedes that he cannot under the facts stated recover on his written contract. This is because of the provisions of Arts. 2827 and 2784, Vernon's Ann.Civ.Statutes, which the courts have construed as prohibiting the trustees of an independent school district (a body politic or municipal corporation) from creating debts or making contracts for school buildings or improvements which are to be paid for by the issuance of bonds, until the bonds have been voted, approved and registered by the Comptroller, sold, and the money in the treasury, or actually available. Harlingen Ind. School Dist. v. C. H. Page Bros., Tex.Com.App., 48 S.W.2d 983; Bone v. Black, Tex.Civ.App., 174 S.W. 971; 37 Tex.Jur., §§ 97–100.

■ The aforementioned statutes and rule of construction apply to the suit of appellee to recover for his architectural services rendered and accepted by the School District upon an implied contract or a quantum meruit basis. Such services could only be paid for from some available fund or funds of the School District. Appellee neither alleged nor proved any fund or funds of the School District out of which such architectural services were to be paid or could be paid at the time the services were rendered and accepted, or at any time thereafter within the contemplation of the parties. If it were contemplated that the services would be paid for out of the WPA funds, or out of the proceeds of the sale of the bonds, then under the aforementioned statutes and the construction placed upon them by the court decisions, the implied contract to pay for the services on a quantum meruit basis was void, because such contemplated funds were not available at the time and never became available before the project had to be abandoned. These statutes clearly provide that the School Board had no power or authority to bind the School District by any sort of contract, or to create an obligation against the School District for the payment of the architectural services rendered until

funds were available for that purpose. Heldenfels v. School Trustees, Tex.Civ. App., 182 S.W. 386, error refused; Board of Trustees Alpine Ind. School Dist. v. Jacob, Tex.Civ.App., 170 S.W. 795; Crowell Ind. School Dist. v. First Nat'l Bank, Tex. Civ.App., 163 S.W. 339. The only kind of contracts for architectural services rendered to school districts that have been enforced by the courts are those made in contemplation of and dependent upon bonds being voted, a sale thereof, and the erection of the building; the courts holding that until all of these considerations come to pass no debt is created against the school district. Eldorado Ind. School Dist. v. Becker, Tex.Civ.App., 120 S.W.2d 476; Harlingen Ind. School Dist. v. C. H. Page Bros., supra. These decisions are based upon the fact that the powers of the school board are prescribed by statute with respect to the expenditure of all funds belonging to the school district, and must be followed to the exclusion of all other methods. Thompson v. Elmo Ind. School District, Tex.Civ.App., 269 S.W. 868; 37 Tex.Jur., 968, §§ 97 and 98, and cases there cited. Such statutes have been construed as showing the general policy of the legislature to limit expenditures by school boards to available funds, and of which limitation any person dealing with this character of corporation is charged with notice, and that in consequence no equity arises in his favor where he knew that there were no available funds to·pay for the services rendered. Bone v. Black, supra; Harlingen Ind. School Dist. v. C. H. Page Bros., supra. And further in support of the view that school boards may expend or contract with reference to bond funds only after the bonds are sold and the funds are on hand, the courts have cited the provisions of Art. 2786a, to the effect that after a certain time and until bonds are sold they may be revoked and cancelled by the voters at an election called for that purpose. The courts reason that this statute emphasizes the legislative intent to provide that bonds must be sold and the funds available before the school board can contract with reference thereto; otherwise, if a valid contract could be made before the bonds are sold and and they are thereafter revoked by the voters, a manifest hardship will be imposed on the school district.

The question presented is not ruled by the decisions in the cases of City of Houston v. Finn, 139 Tex. 111, 161 S.W. 2d 776, 777; West Audit Co. v. Yoakum, Tex.Com.App., 35 S.W.2d 404; and Sluder v. City of San Antonio, Tex.Com.App., 2 S.W.2d 841, as contended by appellee. These cases simply hold that where a city or county has entered into a contract for the performance of certain services which they had the right to contract for, but did not comply with the manner or method which the city charters or statutory laws prescribe for entering into such contracts, and where the services were nevertheless performed and the benefits were accepted by the city or county, the city or county would not be liable on the contract, but would be liable for the value of the services rendered as upon an implied contract, or upon a quantum meruit basis, in order that justice might be done. In each of these cases the city or county had the right to contract for the work done, but merely failed to comply with the charter or statutory methods required to make a legal contract. No such facts exist in the instant case. The School Board had no right and was prohibited by the statutes from making any binding contract for the architectural services until the funds were actually available to pay for such services. The fact that the city and county authorities had the power and authority to make the contracts involved in the cases cited distinguishes them from the instant case wherein the School Board not only. did not have the power to make the contract, but was forbidden by the statutes from making any binding contract to pay for the services until the funds were actually· available to pay for them.

The judgment of the trial court is reversed and judgment is here rendered for appellant School District.

Reversed and rendered.