**KYBURZ, FERRELL & HEESCH,**
Appellants,

v.

**MAGNOLIA INDEPENDENT SCHOOL
DISTRICT, Appellee.**

No. 7298.

Court of Civil Appeals of Texas,
Beaumont.

Jan. 20, 1972.

Rehearing Denied Feb. 10, 1972.

William Emerson Wright, Houston, for appellants.

W. C. McClain, Conroe, for appellee.

KEITH, Justice.

The appeal is by the plaintiffs from a take-nothing judgment rendered non obstante veredicto in their suit for personal services alleged to have been renderd to the school district. Plaintiffs are architects and engineers and defendant is an independent school district domiciled in Montgomery County.

During the month of February, 1968, following preliminary oral negotiations between the parties, plaintiffs and defendants entered into a written contract reciting that it was the intention of the defendant to "[c]onstruct certain school buildings hereinafter referred to as the Project," and plaintiffs agreed to "provide professional services for the Project in accord-

ance with the Terms and Conditions of this Agreement." While the contract provided for the compensation of plaintiffs to be based upon stipulated percentages of the construction cost, it contained a paragraph immediately preceding the signatures reading:

"Payment to the Architect for his services is contingent upon the successful passage by the School District of a bond issue which shall be used to finance the Project. The architects shall be paid for services performed prior to the election immediately upon sale of the bonds."

Plaintiffs entered upon the performance of the contract and the school district called three separate bond elections to procure funds with which to construct the "project" mentioned in the written contract. The results of these elections, held during the months of August, September, and November, 1968, were unfavorable and no bonds were authorized. On November 1, 1969, a fourth bond election authorized the issuance of school construction bonds in the amount of $750,000 and such bonds were sold. In January 1970, defendant advised plaintiffs that the defendant "owes you no legal or moral obligation."

Plaintiffs thereupon instituted suit against defendant seeking $25,000 actual damages for breach of the written contract. There was an alternative count seeking $11,500 upon the theory of a breach of an implied contract or on quantum meruit. Attorney's fees of $4,500 were also sought. Defendant answered with a plea of illegality of the written contract and a denial of any implied contract.

Upon the trial, plaintiffs abandoned their claim for recovery upon the written contract and went to the jury upon their theory of quantum meruit. The jury found:

(1) Defendant's Board of Trustees "knowingly accepted the benefits of any

architectural services performed by Plaintiffs subsequent to their employment in February of 1968, and prior to November 16, 1969";

(2) The reasonable value of such "architectural services" was $10,000;

(3) The reasonable value of attorney's fees necessarily incurred by plaintiffs in the prosecution of the suit was $1,500.

The fourth special issue read:

"Do you find from a preponderance of the evidence that the agreement between Plaintiffs and Defendant was that any payment to the Plaintiffs for any services rendered or to have been rendered by Plaintiffs was contingent upon the successful passage of a bond issue by the voters of the School District with which to finance the building program prepared by Plaintiffs?"

The jury answered: "We do not."

The court granted defendant's motion for judgment non obstante veredicto, denied plaintiffs' motion for judgment upon the verdict, and this appeal has been perfected without the filing of a motion for new trial.

Although plaintiffs have brought forward for review three points of error, by turning to the third point quoted in the margin,* we reach the heart of the controversy between the parties. Plaintiffs abandoned their claim of recovery upon the written contract heretofore noted, but we review the decisions compelling such action in order to reach the contentions of the parties.

■ Unquestionably, and as a matter of law, the written contract between plaintiffs and the Board of Trustees was void ab initio because, as was said in Harlingen Independent School Dist. v. C. H. Page & Bro., 48 S.W.2d 983, 988 (Tex.Comm.App.

* "As appellee district had the general power to contract for architectural services, it was liable upon implied contract to pay

the reasonable value of appellants' services, and the trial court erred in entering judgment contrary to the verdict."

1932): "[T]he board was without power to bind the proceeds of the bond fund to be derived from bonds not even voted at the time the contract was made." See also, City of Big Spring v. Ward, 140 Tex. 609, 169 S.W.2d 151, 154 (1943), where this language was quoted with approval.

The defendant school district advances the argument that it had no *power* or authority to bind the district by any kind of a contract, or to create any obligation against school funds until such funds were *available* for the specific purpose. Defendant points out that power of school districts to expend funds is more severely limited than in the case of other public corporations. This rule is aptly stated in Adams v. Miles, 35 S.W.2d 123, 125 (Tex. Comm.App., 1931, holding approved), where the court said:

"A school district is a quasi corporation of a public nature, and the trustees of said district cannot lawfully expend money belonging thereto except for the purposes authorized by statute. *The power of a school corporation is much more limited than that of ordinary public corporations.* There is no general power possessed by a school corporation to expend public funds not especially conferred by law or necessarily implied from the language of the statute authorizing such expenditure." (emphasis supplied)

In the *Harlingen Case,* supra, Judge Critz reviewed the earlier statutory and case law upon the subject and concluded that the board had no authority to contract with reference to bond funds unless and until they are actually available. (48 S.W.2d at p. 987)

The later statutes and decisions upon the subject were reviewed in Flatonia Independent School Dist. v. Broesche, 176 S. W.2d 223, 225 (Tex.Civ.App., Austin, 1943, error ref. w. o. m.), and the court concluded:

"Such statutes have been construed as showing the general policy of the legisla-ture to limit expenditures by school boards to available funds, and of which limitation any person dealing with this character of corporations is charged with notice, and that in consequence no equity arises in his favor where he knew that there were no available funds to pay for the services rendered."

Plaintiffs, recognizing such rule, contend that the implied contract upon which they rely for recovery is not governed by this line of cases. Instead, they argue that their right of recovery came into existence when the defendants appropriated the fruits of their labor after the fourth—and successful—bond issue had been sold and the proceeds were available.

Plaintiffs place great reliance upon Sluder v. City of San Antonio, 2 S.W.2d 841 (Tex.Comm.App.1928); West Audit Co. v. Yoakum County, 35 S.W.2d 404 (Tex. Comm.App.1931, holding approved); and City of Houston v. Finn, 139 Tex. 111, 161 S.W.2d 776 (1942). These three cases were distinguished in the *Flatonia Case* previously cited in this manner:

"These cases simply hold that where a city or county has entered into a contract for the performance of certain services which they had the right to contract for, but did not comply with the manner or method which the city charters or statutory laws prescribe for entering into such contracts, and where the services were nevertheless performed and the benefits were accepted by the city or county, the city or county would not be liable on the contract, but would be liable for the value of the services rendered as upon an implied contract, or upon a quantum meruit basis, in order that justice might be done. In each of these cases the city or county had the right to contract for the work done, but merely failed to comply with the charter or statutory methods required to make a legal contract. No such facts exist in the instant case. The School Board had no right and was prohibited by the statutes from making any binding contract

for the architectural services until the funds were actually available to pay for such services. The fact that the city and county authorities had the power and authority to make the contracts involved in the cases cited distinguishes them from the instant case wherein the School Board not only did not have the power to make the contract, but was forbidden by the statutes from making any binding contract to pay for the services until the funds were actually available to pay for them." (176 S.W.2d at p. 225)

In response to Special Issue No. 1, the jury found that the defendant "knowingly accepted the benefits of any architectural services performed by Plaintiffs subsequent to their employment in February of 1968, and prior to November 16, 1969." As we have indicated, however, upon motion filed under Rule 301, this answer was set aside and judgment non obstante veredicto was rendered in favor of the defendant.

The rule governing review of a trial court's action in granting a motion for judgment non obstante veredicto is set out in Burt v. Lochausen, 151 Tex. 289, 249 S. W.2d 194, 199 (1952), in this language:

"[T]o sustain the action of the trial court in granting judgment non obstante veredicto, it must be determined that there is no evidence having probative force upon which the jury could have made the findings relied upon."

See also, Eubanks v. Winn, 420 S.W.2d 698, 701 (Tex.Sup.1967); and, we must consider the testimony from the standpoint most favorable to the appellant, indulging every reasonable intendment deducible from the evidence. Leyva v. Pacheco, 163 Tex. 638, 358 S.W.2d 547, 550 (1962). See also, North Texas Lumber Company v. Kaspar, 415 S.W.2d 470, 472 (Tex.Civ. App., Dallas, 1967, error ref. n. r. e.); Harris v. Texas Employers' Insurance Association, 447 S.W.2d 211, 213 (Tex.Civ. App., Beaumont, 1969, error ref. n. r. e.).

We are instructed that in such review the statement of the evidence "will comprehend only that which supports the jury's verdict." Shelton v. Belknap, 155 Tex. 37, 282 S.W.2d 682, 683 (1955). If there is any evidence of probative force, from which reasonable minds might come to the conclusion that the jury came to, then there is "some evidence" to support the findings of the jury, and it is the duty of the court to enter judgment in keeping with such finding. The fact that there may be evidence to the contrary is immaterial. Martinez v. Welcome, 335 S.W.2d 254, 257 (Tex.Civ.App., San Antonio, 1960, error ref. n. r. e.).

■ The trial court was not authorized to disregard the jury's answers because the evidence might have been factually insufficient to support the same; only if there was no evidence to support such findings would such action have been proper. Garza v. Alviar, 395 S.W.2d 821, 824 (Tex. Sup., 1965).

Plaintiffs, admitting that their express written contract was not enforceable, sought recovery only upon an implied contract. This choice was dictated because, as was said in Phoenix Lumber Co. v. Houston Water Co., 94 Tex. 456, 61 S.W. 707, 709 (1901):

"If there was an express contract, there could be no implied contract arising out of the acts of performance of it. The one is destructive of the other. Two things which cannot coexist will not constitute one and the same thing."

See also, Musick v. Pogue, 330 S.W.2d 696, 699 (Tex.Civ.App., San Antonio, 1959, error ref. n. r. e.), by Justice Pope while sitting upon the Court of Civil Appeals.

The legal scholars generally criticize the use of the term "implied contract," preferring the term "quasi contracts," or those which are imposed or created by law. Thus Professor Corbin says, "A quasi contractual obligation is one that is created by

the law for reasons of justice, without any expression of assent and sometimes even against a clear expression of dissent." 1 Corbin on Contracts (1963), § 19, p. 46.

Professor Williston says that "Quasi contractual obligations are imposed by the law for the purpose of bringing about justice without reference to the intention of the parties." 1 Williston on Contracts (3d Ed), § 3A, p. 13. These statements are in accord with the rule applied by Justice Griffin in Ferrous Products Co. v. Gulf States Trading Co., 160 Tex. 399, 332 S. W.2d 310, 312 (1960).

Thus, plaintiffs, seeking to recover upon their quasi contract, invoke the rule of law so aptly stated in Davidson v. Clearman, 391 S.W.2d 48, 50 (Tex.Sup.1965), wherein the court said:

"The right to recover on quantum meruit does not grow out of the contract, but is independent of it. It is based upon the promises implied by law to pay for beneficial services rendered and knowingly accepted."

Defendant, on the other hand, advances the proposition that after the third unsuccessful bond election in 1968 plaintiffs abandoned the "project" and did no more work thereon. It asserts that with a change in membership upon its Board of Trustees, with a new superintendent and fiscal agent, it sought voter approval of another and a different project from that submitted in the first three elections. It points to the fact that plaintiffs took no part in the fourth bond election and nothing was heard from plaintiffs until after the election. Assuming, arguendo, the existence of such facts, we do not reach the conclusion urged by defendant.

■ Our record shows, almost beyond dispute, that plaintiffs did a considerable amount of work upon the "project" during the year 1968, before the defeat of the third bond proposal. The plans and ideas formulated by plaintiffs were made available to the defendant; and, more important-ly, our record shows that at least a portion of the work product of plaintiffs was utilized by defendant when it began the expenditure of the bond funds authorized by the fourth election. There was, consequently, "some" evidence in support of Special Issue No. 1, and the trial court was not authorized to set aside such finding unless the entry of judgment against defendant would have been in contravention of some statute or valid public policy.

After the sale of the bonds authorized at the fourth bond election, defendant was possessed of funds with which to construct the improvements in the school system. At such time, there was no contract in existence between the parties; but, according to the evidence accepted by the jury, defendant then "knowingly accepted the benefits of . . . [the] . . . architectural services [theretofore] performed by Plaintiffs." In so appropriating the fruits of plaintiffs' labor, defendant became liable "to pay the owners the reasonable value thereof" because of the quasi contractual obligation created by law. *Ferrous Products Case*, supra, (332 S.W.2d at p. 312) quoting from Corpus Juris Secundum [now found in 17 C.J.S. Contracts § 6, at p. 575 (1963)]. In other words, the law implied an obligation "to pay for beneficial services rendered and knowingly accepted." Davidson v. Clearman, supra (391 S.W.2d at p. 50).

There being *some* evidence to support the jury's answer to Special Issue No. 1 and, there being no impelling public policy which would deny a recovery by plaintiffs upon the theory of quantum meruit, it was error for the trial court to enter judgment for the defendant and against the plaintiffs.

This holding, determinative of the case, makes it unnecessary for us to discuss the other questions brought forward by the plaintiffs. For the reasons heretofore mentioned, the judgment of the trial court is reversed and judgment now rendered for plaintiffs.

Reversed and rendered.